UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | | |
|---|---|---|
| BECKHAM B. BARNES, | ) | |
| | ) | |
| Petitioner, | ) | Civil Case No. 09-299-GFVT-CJS |
| | ) | |
| v. | ) | |
| | ) | |
| TIM LANE, WARDEN, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Petitioner Beckham B. Barnes has filed a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (R. 1; R. 111; R. 126). Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a report and recommendation under 28 U.S.C. § 636(b). As explained below, it will be recommended that Barnes's § 2254 Petition be denied.

## I.    BACKGROUND

Barnes has been convicted of murder twice. A jury first convicted Barnes of murder in 2001, and he was sentenced to 22 years in prison. *Barnes v. Commonwealth*, 91 S.W.3d 564, 565 (Ky. 2002). However, on direct appeal to the Kentucky Supreme Court as a matter of right under Section 110(2)(b) of the Kentucky Constitution, the Kentucky Supreme Court reversed his conviction and sentence and remanded the case for a new trial "because the prosecutor's closing argument violated [his] right to a fair trial." *Id.* Upon being retried in 2004, Barnes was again convicted of murder, and he was sentenced to 25 years in prison. *Barnes v. Commonwealth*, No.

2004-SC-000197-MR, 2006 WL 734006, at *1 (Ky. Mar. 23, 2006).  On direct appeal from his second conviction, the Kentucky Supreme Court summarized the relevant facts as follows:

> Appellant is a civil engineer and land surveyor with his office located, at the time of the shooting, in a barn across from his house.  Appellant hired Troy Miller, the victim, shortly after Miller graduated from high school.  Appellant trained Miller as a land surveyor.  Miller eventually became qualified as a land surveyor in his own right, but continued to periodically use Appellant's expertise, tools, and equipment. When Miller sought Appellant's help on jobs, Miller would pay Appellant twenty percent (20%) of the fees generated.
>
> On April 1, 1999, Appellant assisted Miller on such a project, but the project was interrupted so that Appellant could attend a pie supper at his daughter's elementary school.  Shortly after Appellant returned to his office, Miller did likewise, and they finished the project around 10:00 p.m.  Internal computer logs indicate the project restarted at 9:45 p.m. and concluded at 10:07 p.m.  Appellant alleges that Miller was behind on the payment of fees and that he refused to print the project until Miller satisfied the account.  Their usual arrangement was to settle the account quarterly.  Miller left the office and Appellant went back across the street to his house.
>
> Sometime later Appellant was awakened by his barking dog and went to investigate.  Appellant's dog led him to his office where he saw movement in front of a lit computer screen.  Barnes obtained a rifle he kept adjacent to his office and ordered the person to "freeze."  Barnes alleges that he heard "gunshots" and fired back with his own rifle and then ran back to his home.  He informed his wife that he thought he had shot the intruder.  The internal computer logged additional activity on the pending project from 12:40 a.m. until 1:52 a.m. and Paula Barnes, Appellant's wife, called the "911" emergency operator at 2:13 a.m.  Appellant admitted to shooting Miller, but argues that the shooting was in self-defense.

*Id.*  At Barnes's second trial, the prosecution's theory of the case was that Barnes murdered Miller and then staged the scene to make it appear that he shot Miller in self-defense.  (*See* R. 105-3).  During his opening statement, the prosecutor told the jury that a .38 pistol was found at the scene near Miller's body.  (R. 105-2, Page ID 4792).  The prosecutor further stated that an inspection of the gun by Detective Ken Hill with a magnifying glass revealed not "one speck of blood on that gun" or the "beginning of [any] latent fingerprint," characterizing it as "a totally clean gun planted at the scene."  (*Id.* at Page ID 4796).

2

Detective Hill testified at the trial that he looked at the gun with a magnifying glass "for anything that [he] could find on it." (R. 22-15, Page ID 1597). When he was asked what he was specifically looking for, he testified he was looking for blood or other bodily fluid "that [he] might could see either with my naked eye or with - with the little magnifying glass." (*Id.* at Page ID 1598). Moreover, when asked if he "made [any] effort to dust that weapon for prints," he testified that he "asked that be done by a lab personnel later" and his request would have said to "examine for latent prints" and to "compare any prints with the included prints of the victim or the accused[.]" (R. 22-16, Page ID 1666-67).

Ronnie Freels, a state firearms expert, also testified regarding his various tests of the gun. (R. 22-11; R. 22-12). With respect to fingerprints, Freels testified that the gun was tested for fingerprints, but none were found. (R. 22-12, Page ID 1421-22). While he first indicated that *he* would have "dusted" the gun for prints (*id.* at Page ID 1422), he later indicated that someone else would have dusted the gun (*id.* at Page ID 1440). Specifically, on recross-examination regarding fingerprint testing of the gun and its bullets, the following exchange took place:

> Q. Okay. So when you used the term you tell us today you used the term that they were dusted, you're talking both about the .38 caliber pistol and the bullets, did you dust them?
>
> A. You may have to ask the detective on that, but let me look and see what my notes. A lot of times I will dust them myself, and let me just check - check here. My notes indicate that it had been dusted for latent fingerprints prior to me getting it.
>
> Q. Okay. So somebody else --
>
> A. Yeah.
>
> Q. -- had - had dusted them? You didn't - then under this you had really nothing to do with the fingerprinting?
>
> A. No. Sometimes I will – I'll dust the guns and the bullets myself. I do all that myself.

3

Q. Just this time.

A. But this time here it says that this weapon had been dusted for latent prints.

Q. Somebody would have dusted it --

A. Yeah.

Q. -- and somebody has to check the dusting; correct?

A. Right.

Q. And your records don't show who did that?

A. No.  And what the results were that there were prints, no.

Q. So you – you're making an assumption since you don't have the report saying that prints were found that there were no prints found, but you don't know that of your own knowledge?

A. When I looked at it, I didn't see any prints and there was powder on it. I didn't see any prints.  That's what my testimony is.

(*Id.* at Page ID 1440-41).  Freels admitted, however, that when analyzing an object for fingerprints one would use scientific equipment.  (*Id.* at Page ID 1442).

During closing arguments, the prosecutor argued that the evidence demonstrated that Miller did not fire the gun at Barnes, pointing to both the lack of blood and fingerprints on the gun. (R. 105-3, Page ID 4829-30).  Specifically, as to fingerprints, the prosecutor stated: "Fingerprints. Did Troy have an opportunity to wipe the fingerprints as he dropped dying if he had this gun in his hand?  Did he have time to wipe the blood off?  Fingerprints dusted, Ronnie Freels, no fingerprints.  Looked under a magnifying glass by [Detective] Hill, no fingerprints."  (*Id.* at Page ID 4830).

The jury convicted Barnes of murder.  However, prior to sentencing, Barnes's counsel submitted an open records request to the Kentucky State Police laboratory, and, in response, he

did not receive a fingerprint analysis on the gun.  (R. 87-5, Page ID 4404).  On February 27, 2004, the day of sentencing, Barnes, citing Kentucky Civil Rule (CR) 60.02, filed a supplement to his previously filed motion seeking a new trial, asserting that the response to the open records request indicated that, contrary to the representations made by the prosecutor and the evidence presented at trial, the gun found next to Miller had not been tested for fingerprints.  (R. 22-30, Page ID 2266). The motion for a new trial did not specify why the open records response refuted the notion that the gun had been tested.  Presumably, counsel's thought was that because the open records request did not contain a copy of any fingerprint testing report on the gun, no testing on the gun had in fact occurred.

At the sentencing hearing, the trial court denied the motion for a new trial and sentenced Barnes to a 25-year term of imprisonment.  (R. 87-5, Page ID 4411-13; *see* R. 121-2, Page ID 5351-52).  Barnes appealed his conviction and the denial of his motion for a new trial, but the Kentucky Supreme Court affirmed his conviction and the denial of his motion.  *Barnes*, 2006 WL 734006, at *1.  With respect to the motion for a new trial, the Kentucky Supreme Court proceeded on the assumption that no laboratory examination of the gun was made, ultimately concluding that "failure of the laboratory to test for fingerprints provides no basis for CR 60.02 relief" because there was nothing to indicate with reasonable certainty that the outcome of the trial would have been any different.  *Id.* at *6.

In March 2007, Barnes filed a state post-conviction motion to vacate judgment and conviction under Kentucky Rule of Criminal Procedure (RCr) 11.42 asserting, among other issues, that trial counsel was ineffective for failing to obtain all available discovery regarding fingerprint evidence, or the lack thereof, and for failing to retain a fingerprint expert.  (R. 121-1, Page ID 5320-48).  The trial court denied the motion, citing Kentucky law as it stood then, that a defendant

5

cannot relitigate under the guise of an ineffective-assistance-of-counsel claim an issue raised and rejected on direct appeal.  (R. 121-3, Page ID 5410).  Alternatively, the trial court concluded that the claim failed on the merits because no Commonwealth witness "ever said at trial that fingerprint analysis had been done on the pistol" but they instead "spoke of not seeing anything that looked like fingerprints."  (*Id.* at Page ID 5410).  The trial court further reasoned that it was speculation to suggest testing would have revealed Miller's fingerprints on the gun.  (*Id.*).

Barnes appealed, and the Kentucky Court of Appeals denied post-conviction relief.  As to "trial counsel's failure to obtain the undisclosed State Police records relating to fingerprint testing (or lack thereof) on the allegedly planted gun," the Kentucky Court of Appeals also relied on Kentucky law, as it stood at that time, precluding collateral review of an issue raised and rejected on direct appeal but later framed as an ineffective-assistance-of-counsel claim.  *Barnes v. Commonwealth*, No. 2007-CA-001747-MR, 2008 WL 2468891, at *6 (Ky. Ct. App. June 20, 2008)).  As to "trial counsel's decision not to retain a fingerprint evidence expert," the Kentucky Court of Appeals observed that Barnes did "not allege that he has had the gun tested and that Miller's fingerprints were found thereon."  *Id.* *7.  Accordingly, it concluded that "it is entirely speculative that if trial counsel had obtained a fingerprint expert, the expert's testing would have revealed Miller's fingerprints," and that it was "unpersuaded that trial counsel's retaining of a fingerprint expert would have resulted in a reasonable probability that the outcome of the trial would have been different."  *Id.*  The Kentucky Supreme Court denied discretionary review in August 2009.  (R. 122-1, Page ID 5489).

On August 27, 2009, Barnes filed his § 2254 Petition asserting, among other grounds, that his rights under the Fifth and Fourteenth Amendments were violated when the prosecution withheld the fact that the gun had not been analyzed for fingerprints and presented false testimony

to the jury that the gun had been tested and no prints were found.  (R. 1, Page ID 67).  Thereafter, Respondent filed, and the Court granted, a Motion to Supplement the Record to include a May 17, 1999 Kentucky State Police laboratory report containing a fingerprint analysis, concluding that the gun found next to Miller was tested and "no latent prints of value for comparison were developed." (R. 7-3, Page ID 278).  This report, prepared by the Automatic Fingerprint Identification Section (AFIS) of the Kentucky State Police Crime Lab, was not part of the state court record and was not provided in response to Barnes's open records request.

Barnes, asserting that he had never seen the AFIS report before, requested an opportunity to conduct discovery to determine whether he would seek leave to amend his § 2254 petition to assert a new claim.  (*See* R. 21; R. 29; R. 59).  The Court granted the request for discovery but limited it to the circumstances giving rise to the production of the AFIS report, its content and dissemination.  (*See* R. 32; R. 49; R. 64; R. 69).  Through discovery, Barnes obtained records from the Kentucky State Police file that referenced the gun at issue.  (*See* R. 52).  He also took the depositions of persons involved in this matter:  Kentucky State Police Commander and Custodian of Records Captain John Carrico; the analyst who prepared the AFIS report, Patricia Barker; trial prosecutor Larry Rogers; Detective Ken Hill; trial counsel David Guarnieri; and trial counsel William Johnson.[1]  (R. 72-76; R. 82).  In addition, Barnes has obtained an affidavit from forensic scientist Larry M. Dehus, who provided an opinion on the AFIS report.  (R. 31-3).

After conducting discovery, Barnes sought to amend his § 2254 petition to assert new grounds raised by the production of the AFIS report and sought to expand the record with the evidence he obtained.  (R. 83).  The Court granted him leave to do so in September 2013 (R. 106), and Barnes filed an Amended § 2254 Petition (R. 111).  However, Barnes moved the Court to stay

---

[1] During her deposition, Barker testified that she was formerly known as Patricia Cox and is the person who signed the report at issue. (R. 58, Page ID 2735).

his case and hold it in abeyance while he pursued grounds relating to the AFIS report in state court. (R. 110). Respondent agreed with Barnes's request (R. 114), and this Court entered an Order staying the case in March 2014 (R. 116; R. 117).

Returning to state court, Barnes filed a motion to vacate his conviction and grant a new trial under RCr 10.02, RCr 10.06, and CR 60.02(d) and (f). (R. 122-1, Page ID 5508). After conducting an evidentiary hearing, the state trial court denied the motion in October 2015, concluding that it was time-barred, was an impermissible successive collateral attack, and was meritless. (R. 124-6, Page ID 6335). The Kentucky Court of Appeals affirmed, *Barnes v. Commonwealth*, No. 2016-CA-001677-MR, 2018 WL 2754474, at \*6 (Ky. Ct. App. June 8, 2018), and the Kentucky Supreme Court denied discretionary review in October 2018 (R. 124-7, Page ID 6384).

Barnes thereafter moved to reopen his federal habeas proceeding and moved to amend his § 2254 Petition. (R. 118; R. 119). The Court granted both motions. (R. 120). Barnes's Second Amended § 2254 Petition again raised the grounds brought in his initial § 2254 Petition:

1. Mr. Barnes's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution were violated when the Venue in Mr. Barnes's case was not returned to Russell County from Wayne County.

2. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when expert scientific testimony regarding gunshot residue testing was admitted in his trial.

3. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the prosecution withheld material evidence regarding the gunshot residue present on Mr. Miller's hands in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

4. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when evidence regarding tire tracks were admitted in trial.

5.  Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the Trial Court permitted impeachment on collateral matters in his trial.

6.  Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the jury received instructions that shifted the burden of proof in his case.

7.  Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated due to the cumulative trial error in his case.

8.  Mr. Barnes was denied the right to effective assistance of counsel and due process under the Fifth, Sixth, and Fourteenth Amendments due to his Trial Counsel's ineffective performance.

(R. 126, Page ID 6543-6605).[2]  Additionally, Barnes raised the following new grounds relating to

the AFIS report that he pursued when he returned to state court:

1.  The State suppressed the AFIS report evidence and identity of the AFIS Analyst while failing to correct false testimony to the jury in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Rosencrantz v. Lafler*, 568 F.3d 577, 584-588 (6th Cir. 2009); *United States v. Bagley*, 473 U.S. 667, 676 (1985) and *United States v. Agurs*, 427 U.S. 97, 104 (1976), and in violation of Mr. Barnes's rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2.  The Prosecutor's Violation of *Brady/Rosencrantz v. Lafler,* 568 F.3d 577, 583 (6th Cir. 2009).

3.  Alternatively, Trial Counsel was ineffective for failing to conduct a reasonable investigation to obtain the AFIS report and ascertain the identity of the AFIS analyst pursuant to *Strickland v. Washington*.

(*Id.* at 6440-6505).  Respondent has since responded to Petitioner's grounds (R. 8; R. 133) and

Barnes has replied (R. 18; R. 136).  This matter is ripe for adjudication.

## II.    ANALYSIS

### A.    Legal Standards

---

[2] Quotations using "Barnes'" to represent the possessive form have been altered to "Barnes's" to maintain consistency in this Report and Recommendation.

Where, as here, a § 2254 petition was filed after April 24, 1996, review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA, a petitioner may obtain habeas relief if the state court's adjudication of his ground "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of the first exception under § 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). First, "[a] state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

Second, a state court's decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted).

Thus, under the AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a

10

substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03.

Moreover, a petitioner carries the burden of proof, and "this is a difficult to meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Further, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Section 2254 relief is grounded in the rationale that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or re-litigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to re-litigate state trials."). Further, the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The AEDPA's standard of review under 28 U.S.C. § 2254(d) applies only to grounds that were adjudicated on the merits. *See Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007). Where the state court did not rule on the merits of a petitioner's ground, application of a *de novo* standard of review is appropriate. *Id.* at 450. In determining whether a ground was adjudicated on the

merits such that AEDPA's heightened deference applies, the habeas court must look to the last reasoned state-court opinion to determine the basis for the state court's rejection of the petitioner's federal constitutional claim. *Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

A federal court cannot grant habeas relief if there is still a potential state remedy for the state courts to consider. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (citing 28 U.S.C. § 2254(b)(1)). To be deemed properly exhausted, therefore, each ground must have been fairly presented to the state courts. *See id.* at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009) ("Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim."). The exhaustion requirement "affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state court, including the state court of last resort." *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990). When a petitioner has failed to fairly present his grounds to the state courts and no state remedy remains, his claims are procedurally defaulted and are barred from habeas review. *See Woolbright v. Crews*, 791 F.3d 629, 631 (6th Cir. 2015).

In cases in which a state prisoner has defaulted his federal grounds in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the grounds is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Barton v. Warden, Southern Ohio Correctional Facility*, 786

F.3d 450, 464 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  A four-part test is used to determine whether federal habeas review is precluded due to a petitioner's failure to observe a state procedural rule.  *See Barton*, 786 F.3d at 464 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  Under this test, courts examine (1) whether the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional ground for relief; and (4) whether the petitioner demonstrates that there was cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *Id.*

### B.    Barnes's Initial Grounds

The Court begins by addressing the eight grounds Barnes asserted in his initial and Amended § 2254 Petitions.  (R. 126, Page ID 6543-6605).  Thereafter, the Court will address the new grounds relating to the AFIS report raised in Barnes's Second Amended § 2254 Petition.[3]

### 1.    Failure to return Barnes's case to Russell County

Barnes first argues that his rights under the Sixth and Fourteenth Amendments of the United States Constitution were violated when the venue in his case was not returned to Russell County from Wayne County.  (R. 126, Page ID 6543).  Some background information is necessary.

Although Barnes was indicted in Russell County for Miller's murder, "[a] change of venue was granted [in his first trial] to Wayne County due to difficulty in empanelling a jury in Russell County."  *Barnes*, 2006 WL 734006, at *1.  Before his second trial, Barnes moved to remand the

---

[3] All of Barnes's grounds for relief are now presented in his Second Amended § 2254 Petition and the Court will, for simplicity's sake, refer to Barnes's Second Amended § 2254 Petition as his § 2254 Petition unless otherwise noted.

case to Russell County for trial, citing Kentucky law and the Sixth Amendment to the United States Constitution, and arguing that "[t]he conditions which previously existed in Russell County, Kentucky, and which led to granting a change of venue to the Wayne Circuit Court no longer exist in Russell County."  (R. 22-28, Page ID 2185).  However, the trial court denied the motion, concluding that a transfer was not required by state law.  (R. 87-4, Page ID 4345).  On appeal, the Kentucky Supreme Court affirmed.  *Barnes*, 2006 WL 734006, at *2.

Barnes now argues that the Kentucky Supreme Court's "decision was contrary to, or involved an unreasonable application of, clearly established Federal law, was based on an unreasonable determination of the facts in light of the evidence presented and was objectively unreasonable in deciding the facts and the law."  (R. 126, Page ID 6560).  Respondent counters that this ground is non-cognizable because (1) any perceived errors of state law are unreviewable and (2) Barnes's Sixth Amendment argument does not apply in the federal habeas context.[4]  (*See* R. 8-2, Page ID 323).

First, the Court addresses Barnes's ground to the extent that he argues violations of state law.  In this regard, Barnes's presentation of this ground is notable for its vigorousness in asserting that the Kentucky state courts misapplied Kentucky law in reviewing the motion to remand his underlying criminal case to Russell County.  (*See* R. 126, Page ID 6543-60).  For example, Barnes, at length, argues that the state courts improperly interpreted Kentucky venue statutes (*see, e.g.,* Kentucky Revised Statute (KRS) § 452.230) and erroneously disregarded the venue provisions of Section 11 of the Kentucky Constitution.  (*Id.* at Page ID 6547-48).  However, such argument, rather than advancing Barnes's cause, undermines it.  This is because inquiries into a state's

---

[4]  Respondent did not address this ground in his Response to Barnes's Second Amended § 2254 Petition but instead incorporated his Response to Barnes's initial § 2254 Petition, which addressed this ground and the other grounds first asserted in Barnes's initial § 2254 Petition.  (*See* R. 133, Page ID 6632-33).  Accordingly, the Court cites Respondent's initial Response.  (R. 8).

application of its own law "*is no part* of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (emphasis added). Critically, relief under the statute is limited to contrary or unreasonable applications of "*clearly established Federal law*, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (emphasis added). This means that pure state law questions "are not cognizable in federal habeas proceedings." *Lewis v. Jeffers*, 497 U.S. 764, 783 (1990).

Barnes, at least superficially, recognizes that pure state law questions are unreviewable in federal habeas proceedings.[5] (*See* R. 18, Page ID 823). But he relies on a caveat—habeas relief is not precluded "where a state court's error in interpreting or applying its own law has rendered the trial that convicted the appellant so fundamentally unfair as to have deprived appellant of substantive due process in violation of the U.S. Constitution." *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998); (R. 18, Page ID 823). Such a qualification to the ban on reviewing a state court's interpretation of state law is consistent with § 2254(d)(1)'s limitation on habeas relief for violations of *clearly established Federal law*. Put simply, while *pure* state law questions are beyond habeas relief, state law errors can afford habeas relief when (and only when) *those errors rise to a clearly established violation of Federal law*, which Barnes here claims is his denial of substantive due process as afforded by the United States Constitution. *See Lewis*, 497 U.S. at 780 ("Because federal habeas corpus relief does not lie for errors of state law, federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process . . . violation.").

---

[5] Barnes did not address this ground or the other grounds first asserted in his initial § 2254 Petition in his Reply in support of his Second Amended Habeas Petition. (*See* R. 136). Accordingly, the Court considers his Reply in support of his initial § 2254 Petition. (R. 18).

To support his argument that his trial was so fundamentally unfair as to deny him due process, Barnes asserts as follows:

> [T]he state cannot simply try Mr. Barnes anywhere it wishes. But rather, at the minimum, it must follow Kentucky's Constitution and statutory law. Mr. Barnes's venue claim, although predicated on state law, directly implicates a federal fundamental fairness question because Ky. Const. Section 11 requires a "public trial by an impartial jury of the vicinage."

(R. 18, Page ID 823-24). In sum, Barnes proposes that his federal due process rights were violated because the Kentucky courts did not follow Kentucky law. But such a proposition misunderstands the constraints of habeas review discussed above. Importantly, a state court's failure to follow its own state law does not necessarily mean that a defendant has been denied a fair trial. *Rivera v. Illinois*, 556 U.S. 148, 160 (2009) ("[E]rrors of state law do not automatically become violations of due process."). If the Court were to accept Barnes's proposition, the Supreme Court's directive that habeas relief does not lie for pure errors of state law would be easily bypassed, as a petitioner could simply claim a due process violation based on a state court's misapplication of state law in order to attain federal habeas review of state law questions. *Cf. McGuire*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, to the extent that Barnes asserts that the alleged misapplication of Kentucky law *itself* resulted in him being denied due process, such a claim is non-cognizable.[6] *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) ("We agree with the State that Curtis is impermissibly attempting to use a petition for a writ of

---

[6] While an "arbitrary denial of a state-created right for which there is no state remedy is also a violation of procedural due process," nothing indicates that the state trial court acted arbitrarily here. *Norris*, 146 F.3d at 329. Moreover, "even assuming that the state trial court acted arbitrarily," any error "was cured through the appellate review process that was available to [Barnes] and which [he] took advantage of" in his direct appeal to the Kentucky Supreme Court. *Id.* Further, Barnes "has not claimed and offers no proof that the [Kentucky] court system as a whole is arbitrary and lacks a rational mechanism/process for remedying errors." *Id.*

habeas corpus to press his preferred interpretation of Illinois law.  We may not review state-court interpretations of state law.").

Having determined that Barnes cannot simply argue that he was denied a fundamentally fair trial because of alleged misapplications of state law, the Court now considers his additional argument—"[t]he Kentucky Constitution, statutory law and Sixth Amendment to the United States Constitution mandate that a person can be tried for a crime only where that crime was committed." (R. 126, Page ID 6555).  Again, to the extent that Barnes continues to press for his preferred interpretation of Kentucky state law, his ground is non-cognizable.  *See Wilson v. Berghuis*, No. 09-14787, 2013 WL 757023, at *5 (E.D. Mich. Feb. 28, 2013) ("To the extent that Petitioner is arguing that Michigan law creates an obligation on the part of the prosecutor to establish venue, such a claim is also non-cognizable in this habeas proceeding.").

However, to the extent that Barnes argues that the misapplication of state law and the United States Constitution violated his Sixth Amendment rights, his claim is not one of pure state law.  Accordingly, the question becomes:  Was the Kentucky Supreme Court's decision denying relief on this ground contrary to, or an unreasonable application of clearly established Federal law, as determined by the Supreme Court, or did it involve an unreasonable determination of the facts in conjunction with applied legal principles?  *See* § 2254(d)(1)-(2).

On this front, Barnes cites *United States v. Cabrales*, 524 U.S. 1, 6 (1998), which discusses the Sixth Amendment's provision requiring "an impartial jury of the State and district wherein the crime shall have been committed."  (R. 126, Page ID 6555).  This provision "fixes the situs of the trial in the vicinage of the crime rather than the residence of the accused."  *Johnston v. United States*, 351 U.S. 215, 220-21 (1956).  Relying on this vicinage provision, Barnes reasons that the trial court's failure "to transfer this case back to Russell County . . . violated Mr. Barnes's right to

be tried in the vicinage where the indictment was originally returned." (R. 18, Page ID 824; *see* R. 126, Page ID 6555). However, this argument fails at the forefront because the vicinage provision of the Sixth Amendment has not been extended to the states through the Fourteenth Amendment and thus can provide no basis for § 2254 relief. *Caudill v. Scott*, 857 F.2d 344, 345-46 (6th Cir. 1988) ("After comparing the language of the 1789 Act with that of the Sixth Amendment and the venue provision in Article III, Sec. 2, Cl. 3 of the Constitution, [the judge] concluded that 'districts' as used in the Amendment refer only to federal judicial districts. Our examination of these sources leads to the same conclusion."); *Wilson*, 2013 WL 757023, at *5 ("While the 'vicinage' clause of the Sixth Amendment to the United States Constitution guarantees the right to be tried by a jury of the district in which the crime has been committed, this right only applies to federal criminal trials and the Fourteenth Amendment did not extend the vicinage clause to state criminal trials.").

Lastly, Barnes briefly cites to *Murphy v. Florida*, which addressed the United States Constitution's requirement for impartial jurors, and more specifically, the petitioner's attempt in that case to argue that he received an unfair trial due to jurors' alleged bias resulting from publicity surrounding the case. *Murphy v. Florida*, 421 U.S. 794, 799-803 (1975) (concluding that "Petitioner ha[d] failed to show that the setting of the trial was inherently prejudicial or that the jury-selection process of which he complain[ed] permits an inference of actual prejudice"). (R. 126, Page ID 6558). In conjunction with *Murphy*, Barnes cites portions of the voir dire transcript that he asserts show that jurors were impartial in his case due to their review of pretrial publicity. (R. 126, Page ID 6558-60). It is unclear if Barnes's argument is intended to raise an independent ground of denial to a fair trial because of alleged impartial jurors due to pretrial publicity or if it is instead offered to bolster his above argument that the state courts' misapplication of state law

18

denied a fair trial. If it is the former, as Respondent argues, the ground is procedurally defaulted because Barnes never raised any juror-impartiality ground in the state courts due to jurors viewing pretrial publicity, and he now has no legal mechanism to raise such a claim in the state courts. *See Woolbright*, 791 F.3d at 631 ("When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted."); *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011) ("It follows that because any attempt to now exhaust the *Brady* claim in the state courts would be dismissed as untimely, the claim is, to this extent, procedurally defaulted."); *see Hodge v. Haeberlin*, 579 F.3d 627, 637-38 (6th Cir. 2009) (describing Kentucky's strict limits on collateral remedies); (R. 8-2, Page ID 324; R. 8-5, Page ID 378-85; R. 8-9). And, if it is the latter, the argument fails because, as discussed, this Court does not review pure errors of state law and Barnes has failed to show any violation of federal law. Accordingly, Barnes's first ground fails.

### 2. Admission of gunshot-residue tests

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when expert scientific testimony regarding gunshot residue testing was admitted in his trial. (R. 126, Page ID 6561). The Kentucky Supreme Court described the basis for this ground as follows:

> [T]he prosecution contends that someone other than Miller, specifically the Appellant, fired first and then planted the weapon beside Miller's body. To prove this theory the prosecution produced the testimony of Ms. Zenobia Skinner of the Kentucky State Police. She compared the gunshot residue from the victim's hands to that from a test firing by Mr. Ronnie Freels, a retired Kentucky State Police Ballistics expert. Particularly she tested for the presence, or lack thereof, of three specific chemical substances: antimony, barium, and lead. The test firing results indicated significant levels of antimony and lead, indicating the gun was an emitter of those two substances.

*Barnes*, 2006 WL 734006, at *2.  Barnes argues now, as he unsuccessfully did on appeal to the Kentucky Supreme Court, that Skinner's testimony was not reliable under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (R. 126, Page ID 6561).  Respondent argues that this ground is non-cognizable to the extent that it challenges state court evidentiary rulings and that *Daubert* provides no basis for habeas relief.  (R. 8-2, Page ID 324).

As emphasized above in addressing Barnes's first ground, this Court cannot review pure questions of state law.  *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) ("State court interpretations of state law generally bind the federal reviewing court.").  Accordingly, to the extent that Barnes's second ground alleges misapplication of Kentucky law, this ground is non-cognizable.  *See Markham v. Smith*, 10 F. App'x 323, 325 (6th Cir. 2001) ("To the extent that Markham alleges the misapplication of the Michigan Rules of Evidence by Michigan courts, his claims are non-cognizable, as this court does not grant habeas relief on state law grounds.").  However, Barnes does *assert* a Federal constitutional violation:  "[T]he Trial Court's error of admitting unreliable expert scientific testimony regarding gunshot residue testing, in contradiction of *Daubert*, violated Mr. Barnes's due process right to a fundamentally fair trial under the Fifth and Fourteenth Amendments of the U.S. Constitution."  (R. 18, Page ID 825).

But once again, any due process violation must be proved in terms of § 2254(d)'s requirements, meaning that Barnes must demonstrate that the state courts rendered a decision contrary to clearly established federal law, or unreasonably applied clearly established federal law, as determined by the Supreme Court.  *Markham*, 10 F. App'x at 325 ("[T]o the extent that we treat [Petitioner's] claims as alleged due process violations, those violations must satisfy 28 U.S.C. § 2254(d) for habeas relief to be granted."); *cf. Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has

20

limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly."). Here, *Daubert* can afford no basis for federal habeas relief because the Supreme Court's decision "interpreted the Federal Rules of Evidence and 'did not set a constitutional floor for the reliability of scientific [or expert] evidence.'" *Franco-Avina v. Palmer*, No. 17-2326, 2018 WL 2064806, at *2 (6th Cir. Apr. 24, 2018) (quoting *Bojaj v. Berghuis*, 702 F. App'x. 315, 321 (6th Cir. 2017)); *Norris*, 146 F.3d at 335 (on habeas review agreeing "with the district court that *Daubert* concerned the Federal Rules of Evidence which is not relevant to appellant's conviction"). Accordingly, as Barnes has pointed to no clearly established federal law on which to base his argument, this ground fails.

### 3.    Failure to disclose gunshot residue evidence before trial

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when the prosecution withheld material evidence regarding the gunshot residue present on Miller's hands in violation of *Brady v. Maryland*. (R. 126, Page ID 6578). The Kentucky Supreme Court described the basis for this ground as follows:

> This claim arises because Skinner's report on the victim, Miller, did not indicate a presence of barium or lead, yet she testified at trial that there were significant amounts of lead and the presence of barium on the swabs of Miller's hand, allowing the inference that he had fired a gun.

*Barnes*, 2006 WL 734006, at *3. The Kentucky Supreme Court rejected Barnes's ground, concluding that "Skinner's testimony at trial cured [any *Brady*] violation by presenting the jury directly with the exculpatory evidence." *Id*. Barnes argues that this was a contrary or unreasonable application of *Brady*. (R. 126, Page ID 6585). Respondent argues that the Kentucky Supreme Court's ruling, while technically flawed in some ways, is not an unreasonable application of *Brady*. (R. 8-2, Page ID 329-30).

Unlike his last two grounds, Barnes's current ground is based on clearly established Supreme Court precedent, *Brady v. Maryland*.  *See Payne v. Bell*, 418 F.3d 644, 661 (6th Cir. 2005) (analyzing in habeas proceeding whether state court unreasonably applied *Brady*).  A *Brady* claim has three elements: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued."  *Clark v. Warden*, 934 F.3d 483, 492 (6th Cir. 2019) (quoting *Banks v. Dretke*, 540 U.S. 668, 691, (2004)).  In assessing prejudice, the court considers materiality, which "pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial."  *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). And in "determining whether the withheld information was material and therefore prejudicial, [a court] consider[s] it in light of the evidence available for trial that supports the petitioner's conviction."  *Jells v. Mitchell*, 538 F.3d 478, 502 (6th Cir. 2008).

While Barnes argues that all three of *Brady*'s elements are met, this Court focuses on the last element, prejudice (or materiality) because that is the element that the Kentucky Supreme Court ultimately rested its decision upon.[7]  On this point, Barnes argues that the Kentucky Supreme Court was incorrect when it characterized any *Brady* violation as "harmless."  (R. 126, Page ID

---

[7] Thus, the Court assumes for purposes of its discussion, but does not decide, that the first two *Brady* elements are met.

6579).    Respondent concedes that this characterization was "technically not correct," but emphasizes "that the Kentucky Supreme Court simply found no prejudice or no materiality." (R. 8-2, Page ID 329).  The Court first considers whether the Kentucky Supreme Court's decision was contrary to *Brady* and next considers whether it unreasonably applied *Brady*.

It was technically incorrect for the Kentucky Supreme Court to describe any *Brady* violation as harmless because "[t]he materiality standard in traditional *Brady* claims supplants harmless-error review because practically speaking, the two analyses are the same." *Rosencrantz v. Lafler*, 568 F.3d 577, 584 n.1 (6th Cir. 2009).  Put simply, it is inconsistent to find a *Brady* violation, *which requires a finding of materiality*, but at the same time to find that error harmless, *which means there was no finding of materiality*.  Still, the essence of the Kentucky Supreme Court's decision reveals that it was not contrary to *Brady*.

Notably, the Kentucky Supreme Court concluded that "the Commonwealth's failure to furnish appellant with a report that accurately disclosed investigatory findings of probable gunshot residue on the victim's hands was likely a *Brady* violation."  *Barnes*, 2006 WL 734006, at *3. This statement indicates that the Court was simply imprecise in its use of the term "*Brady* violation," as this sentence, in context, indicates that the Court found only two elements of *Brady* had "likely" been met, (1) the existence of favorable evidence, which (2) the prosecution suppressed.  The United States Supreme Court has observed this occasional imprecise use of the term "*Brady* violation," noting that it is technically incorrect.

> Thus the term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called "*Brady* material"—although, strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene*, 527 U.S. 263, 281 (1999). Accordingly, strictly speaking, all three elements of *Brady* must be met for a court to call an error a "*Brady* violation." But here, the Kentucky Supreme Court's discussion of "harmless" error was, in actuality, an imprecise way to phrase its determination that no prejudice occurred because the suppressed information was not material.

> [Skinner's] live testimony was more favorable than the report. It also revealed an inconsistency that Appellant's counsel used to attack Skinner's testimony.
>
> While the Commonwealth's failure to furnish appellant with a report that accurately disclosed investigatory findings of probable gunshot residue on the victim's hands was likely a *Brady* violation, Skinner's testimony at trial cured the violation by presenting the jury directly with the exculpatory evidence. Accordingly, we find that any error with respect to the *Brady* violation was harmless beyond a reasonable doubt.

*Barnes*, 2006 WL 734006, at *3. Accordingly, the Kentucky Supreme Court's discussion of *Brady*, while imprecise, was not contrary to *Brady*.[8] *See Jalowiec*, 657 F.3d at 306 (concluding that district court's misleading ruling as to *harmlessness* of *Brady* violation was in actuality an adjudication of the *materiality* requirement of *Brady*).

Having determined that the Kentucky Supreme Court ultimately rejected Barnes's ground on prejudice (or materiality) grounds, the Court now considers whether the Kentucky Supreme Court unreasonably applied *Brady*. After all, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *Bencs*, 28 F.3d at 560. And here, as the Kentucky Supreme Court observed, Barnes obtained the suppressed information at trial and was able to actually turn it to his "advantage" because "[t]he live testimony was more favorable than the report" and counsel was able to use the "inconsistency . . . to attack

---

[8] Because this Court finds that the Kentucky Supreme Court's reasoning was ultimately not contrary to the Supreme Court's instruction in *Brady*, it concludes that the deference required under the AEDPA remains appropriate on this ground. However, this Court has also considered the result if the ground were reviewed *de novo* and concludes that the ground would likewise fail. *See Woods v. Smith*, 660 F. App'x 414, 432 (6th Cir. 2016) (noting that, if a federal habeas court concludes that a state court's ruling is contrary to clearly established federal law, the ground is ordinarily reviewed *de novo*).

Skinner's testimony." *Barnes*, 2006 WL 734006, at *3. Accordingly, having obtained an *advantage* in using Skinner's inconsistent trial testimony against her, this Court cannot conclude that the Kentucky Supreme Court's determination that Barnes was not prejudiced by the disclosure of the testimony until trial was an unreasonable application of *Brady*.

Barnes, however, demurs at the Kentucky Supreme Court's conclusion, asserting that had Skinner's testimony been included in her report, his counsel "could have used that information in his defense in voir dire, opening statement and throughout the trial." (R. 126, Page ID 6582). He also contends that he could have retained an expert to "debunk Ms. Skinner's testimony and to testify about the significance of the presence of all three elements of antimony, barium and lead on Mr. Miller's hands." (*Id.* at Page ID 6585).

However, Barnes offers no specific examples of what counsel would have presented during voir dire, the opening statement, or throughout the trial in order to demonstrate that "the result of the proceeding would have been different" so as to establish prejudice (or materiality). *Bagley*, 473 U.S. at 682. Barnes's failure to support his assertions with developed argument cannot reasonably be expected to warrant habeas relief. *See Jalowiec*, 657 F.3d at 307 (denying habeas relief where petitioner failed to "demonstrate[] *how* he could have effectively used" information to meet the materiality requirement of *Brady*) (emphasis in original). And while Barnes cites an expert report that he asserts, without any argument, would "debunk" Skinner's testimony, review of the report reveals that it was prepared in February 2007, almost a year after the Kentucky Supreme Court denied this ground on direct appeal. (R. 1-6, Page ID 166-70). Because the Kentucky Supreme Court adjudicated this ground on the merits, this Court's "review is limited to the record that was before the [Kentucky Supreme Court]," which did not have the proffered report. *Carter v. Bogan*, 900 F.3d 754, 774 (6th Cir. 2018); *see Cullen*, 563 U.S. at 185 ("If a claim has

been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").  "This makes sense, as when [a court] conduct[s] a § 2254(d)(1) review, [it is] reviewing the decision of the state court, not the underlying claim." *Carter*, 900 F.3d at 774.

Lastly, Barnes fails to develop this ground in another critical way.  While *Brady* is clearly established Supreme Court precedent that can support habeas relief, a petitioner "must show that the [alleged] mistake violated *concrete Supreme Court holdings, not generalized principles*." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020) (emphasis added, internal citations omitted). Here, Barnes "has not identified any Supreme Court decision that found a *Brady* violation under facts similar to those here." *Vaughn v. Perry*, No. 16-CV-02598, 2018 WL 3729079, at *8 (M.D. Tenn. Aug. 6, 2018).  Accordingly, for all the reasons given above, this ground fails.

### 4.   Admission of tire tracks

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when evidence regarding tire tracks was admitted at trial. (R. 126, Page ID 6586).  The Kentucky Supreme Court described the basis for this ground as follows:

> [Detective] Hill testified from photos of the scene where the decedent's truck was found that there were two sets of tire tracks.  Hill attributed one set to a turkey hunter and the second to a rear wheel drive vehicle that lost traction and made a "fish tail" mark on the gravel road.  The "fish tail" was caused by an accelerated start with the driver over-applying power and losing traction.
>
> The Commonwealth introduced the testimony of Detective Hill to support its theory that someone had moved the victim's truck in an attempt to place it in such a position as to support the Appellant's story and then sped off in another vehicle.

*Barnes*, 2006 WL 734006, at *3-4.  Barnes argues now, as he unsuccessfully did on appeal to the Kentucky Supreme Court, that Hill's testimony was not reliable under the standard set forth in

26

*Daubert*.[9]  (R. 126, Page ID 6586; *see* R. 8-6, Page ID 387).  Barnes also briefly reiterates his argument from state court that the testimony should have been excluded under Kentucky's law of the case doctrine because that testimony was excluded in his first trial.  The Kentucky Supreme Court rejected this argument, concluding that the law of the case doctrine did not apply.  *See Barnes*, 2006 WL 734006, at *3-4; (R. 126, Page ID 6591-92).  Respondent appropriately argues that this ground is non-cognizable to the extent that it challenges state law issues and that *Daubert* provides no basis for habeas relief.  (R. 8-2, Page ID 330).

As noted above in addressing Barnes's second ground, to the extent that Barnes argues that the state courts misapplied Kentucky law, including Kentucky evidentiary law and the law of the case doctrine, this ground is non-cognizable.  *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("Bey's first claim is that, by admitting evidence of the Mihas murder, the state court violated Ohio R. Evid. 404(B).  This is a claim that the state trial court erred in the application of state law, specifically a ruling on evidence, and standing alone, this claim is simply not cognizable on habeas review."); *Russell v. Davis*, No. CV 07-3692 TJH FFM, 2011 WL 1254559, at *2 (C.D. Cal. Mar. 4, 2011), *report and recommendation adopted*, No. CV 07-3692 TJH FFM, 2011 WL 1253895 (C.D. Cal. Apr. 4, 2011) ("Finally, petitioner alleges . . . that the governor's decision violated the doctrines of law of the case, *res judicata*, and collateral estoppel.  These are state law issues, and they are not cognizable on federal habeas review.") (internal citation to record omitted).

However, Barnes does *assert* a federal constitutional violation:  "Admission of the evidence violated Mr. Barnes's right to a fair trial because Detective Ken Hill was not qualified to

---

[9] Barnes also argued in state court that the testimony should not have been permitted under the Kentucky Rules of Evidence.  (R. 8-6, Page ID 397).  While the Kentucky Supreme addressed Barnes's ground in terms of the Kentucky Rules of Evidence, it did not explicitly address the *Daubert* variant of his ground.  *Barnes*, 2006 WL 734006, at *3-4.  This is no matter because Barnes's ground is, for the reasons explained above, non-cognizable, and thus the Court need not review its merits.

testify as an expert and tire track evidence does not meet the requirements of *Daubert*." (R. 126, Page ID 6587). But once again, a claimed due process violation must still satisfy § 2254(d)'s requirements. *See Markham*, 10 F. App'x at 325. Barnes's relied upon case to support his due-process ground, *Daubert,* interpreted the Federal Rules of Evidence and does not qualify as clearly established Supreme Court precedent for purposes of § 2254(d). *Franco-Avina v. Palmer*, 2018 WL 2064806, at *2. Accordingly, this ground fails.

### 5.    Impeachment on collateral matters

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when the trial court permitted impeachment on collateral matters at trial. (R. 126, Page ID 6592). The Kentucky Supreme Court described the basis for this ground as follows:

> Appellant next argues that the Commonwealth improperly impeached his parents, Wilbur and Margie Barnes, on collateral facts. . . . The impeachment arose from two inconsistent lines of testimony by Appellant's parents as to the time they arrived at the scene and whether they arrived together.
>
> Appellant's mother, Margie, testified before the grand jury that she and her husband arrived together at the crime scene. To illustrate the position of their car she sketched the location where they parked their vehicle. However, various police and ambulance personnel testified that they watched Wilbur drive in alone, and that Margie must have arrived earlier for her to already be on the scene. Further, the witnesses stated that Wilbur could not have parked in the location described by Margie because an ambulance was already parked there.
>
> Margie explained that Wilbur drove slowly into the driveway and she got out and ran into the house. After reviewing her husband's testimony she admitted she was wrong and ultimately testified that she was unsure about where they parked. A neighbor, Ms. Lisa Brumley, also testified that she saw Wilbur pull out in front of her around midnight as she was coming home from work. The inconsistency between Wilbur and Margie and between the other uninterested parties, the police, ambulance personnel, and neighbor reflects a proper basis for the trial court to rule as it did and allow such impeachment.

*Barnes*, 2006 WL 734006, at *4. The Kentucky Supreme Court's rejection of this claim rested on

Kentucky Rule of Evidence 403. *Id.* at *5. Barnes argues now, as he unsuccessfully did on appeal,

that the trial court improperly permitted the prosecution to impeach his parents. (R. 126, Page ID

6593). Respondent argues that this ground is non-cognizable to the extent that it challenges

Kentucky state law rulings and that Barnes has failed to show any basis for habeas relief. (R. 8-2,

Page ID 331).

As indicated in this Court's discussion of other grounds, to the extent that Barnes argues

that the state courts misapplied Kentucky law; that is, state evidentiary law regarding the

permissibility of impeachment, this ground is non-cognizable. *See Davis v. Romanowski*, No. 04-

CV-71309, 2004 WL 7331214, at *3 (E.D. Mich. Dec. 16, 2004) ("In the present case, Petitioner's

claim that the trial court erred in excluding Lewis' prior drug convictions for impeachment

purposes does not present a constitutional challenge that is cognizable in a federal habeas

proceeding."); (*see* R. 126, Page ID 6598). Moreover, while Barnes does vaguely *assert* a federal

constitutional violation of his due process rights, he has not *shown* such a violation. Notably,

Barnes fails to point to a single Supreme Court case clearly establishing a due process violation

based upon a state court impermissibly permitting impeachment on collateral matters. *See Wilson

v. Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017) ("Wilson has not pointed to any other Supreme Court

case to support his position that admission of the officers' testimony regarding Ms. Wilson's prior

consistent statements deprived him of a fundamentally fair trial. Therefore, under the narrow

[AEDPA] standards . . . , Wilson's habeas relief on this claim fails."); (*see* R. 126, Page ID 6592-

600). Accordingly, this ground fails.

### 6.    Jury instructions and the burden of proof

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when the jury received instructions that shifted the burden of proof in his case. (R. 126, Page ID 6601). The Kentucky Supreme Court described the basis for this ground as follows:

> Appellant's next claim of error is that the verdict form improperly shifted the burden to the Appellant. Appellant objected to the verdict form at trial and thereby preserved the issue for appellate review. The instructions are properly described as a "form" with standard language beginning with the Presumption of Innocence:
>
>> A. The law presumes a defendant to be innocent of a crime and the Indictment shall not be considered as evidence or as having any weight against him. You shall find the defendant not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that he is guilty. If upon the whole case you have a reasonable doubt that he is guilty, you shall find him not guilty.
>>
>> B. If you believe from the evidence beyond a reasonable doubt that the Defendant would be guilty of Intentional Murder under Instruction No. 3B(1), except that you would have a reasonable doubt as to whether at the time he killed Troy Miller he was or was not acting under the influence of extreme emotional disturbance, you shall not find the Defendant guilty of Intentional Murder under Instruction No. 3B(1), but shall find him guilty of First Degree Manslaughter under Instruction No. 4B(1).
>
> While the form provided for alternative findings by the jury, such as first-degree manslaughter instead of intentional murder, in no way does it "shift the burden" to Appellant. The instructions properly described the presumption of Appellant's innocence and the burden of proof of the Commonwealth.

*Barnes*, 2006 WL 734006, at *5. Barnes argues that "the verdict form required the jury to find the defendant not guilty of each specific offense that the jury was instructed on, as opposed to a single verdict form finding him not guilty." (R. 126, Page ID 6601-02). Respondent argues that the instructions did not shift the burden of proof to Barnes. (R. 8-2, Page ID 333).

General ambiguities in jury instructions do "not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). "Rather, the defendant must show

both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190-91 (quoting *McGuire*, 502 U.S. at 72)).

Here, Barnes's only rationale for why the jury instructions were so ambiguous as to deny him his due process right to a fundamentally fair trial is that "the verdict form required the jury to find the defendant not guilty of each specific offense that the jury was instructed on, as opposed to a single verdict form finding him not guilty." (R. 126, Page ID 6601-02). He is mistaken. As noted by the Kentucky Supreme Court, the form simply provided for "alternative findings"—the jury could convict Barnes of first-degree manslaughter instead of murder if it had some doubt as to whether Barnes was acting under the influence of extreme emotional disturbance. *Barnes*, 2006 WL 734006, at *5. The potential to convict on an alternate offense does not mean that burden was shifted to Barnes to prove his innocence, and "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury," which is especially evident in light of the preliminary instruction that Barnes held the presumption of innocence. *Holland v. United States*, 348 U.S. 121, 140 (1954). As the Kentucky Supreme Court concluded, "in no way" did the instructions shift the burden to Barnes. *Id.* Accordingly, this ground fails.

### 7. Cumulative error

Barnes next argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated due to the cumulative trial error in his case. (R. 126, Page ID 6603). Respondent argues that this claim is non-cognizable (R. 8-2, Page ID 340), which Barnes concedes, asking "for a new rule of law" (R. 18, Page ID 870). However, under § 2254(d)(1), it is only clearly established federal law, *as determined by the Supreme Court* (not this Court) that can provide a basis for habeas relief. And "the law of this Circuit is that cumulative

error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."

*Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).  Accordingly, this ground fails.

### 8.    Ineffective assistance of counsel

Barnes next argues that his rights to effective assistance of counsel and due process under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution were violated due to his trial counsel's ineffective performance.  (R. 126, Page ID 6604).  He contends that trial counsel was ineffective because he failed "to secure all discovery and failed to retain experts to assist with the forensic evidence in this case."  (*Id.* at 6606).  Respondent argues that this ground fails on the merits.

To succeed on his ineffective-assistance-of-counsel ground, Barnes must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove deficient performance, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  He meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

To prove prejudice, Barnes "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695.

Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").  Finally, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because both *Strickland* and § 2254(d) are "highly deferential" and when both the standards apply together, review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

Barnes contends that his trial counsel was ineffective for (1) failing to secure all discovery and (2) failing to retain experts to assist with the forensic evidence in this case.  (R. 126, Page ID 6606).  The Court considers each claim within this ground in turn.

### a.      Failure to secure all discovery

Regarding counsel's alleged failure to secure discovery, Barnes's § 2254 Petition is notable in that it offers almost no argument as to what discovery counsel should have obtained and how counsel was thus ineffective.  By failing to adequately develop this issue, Barnes has failed to state a ground for habeas relief.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012).  ("Yet, merely conclusory allegations of ineffective assistance like those Wogenstahl makes here, are insufficient to state a constitutional claim.).  However, the Court considers Barnes's vague

33

indication that he is challenging counsel's failure to obtain the information not contained in Skinner's report regarding gunshot residue but that was presented in her testimony at trial. (*See* R. 126, Page ID 6615 (alleging that trial counsel failed "to secure all available discovery regarding gunshot residue testing")); (*see generally* ground two's discussion of Skinner's report and trial testimony). On review from the denial of Barnes's RCr 11.42 motion, the Kentucky Court of Appeals described the basis for such an argument as follows:

> In the course of discovery, State Police forensic analyst Zenobia Skinner provided a report she had prepared reflecting her analysis of the gunshot residue evidence. The report stated that the gunshot residue test performed on Miller's hands did disclose the presence of antimony, but did not indicate a presence of barium or lead; however, at trial, she testified that the residue test did disclose significant amounts of lead and the presence of barium. Barnes alleges that he received ineffective assistance of counsel because trial counsel failed to obtain the "undisclosed" test results reflecting the presence of barium and lead.

*Barnes*, 2008 WL 2468891, at *4. Ultimately, the Kentucky Court of Appeals did not address the *ineffective-assistance claim* on the merits, noting that the underlying basis for the claim—Skinner's failure to disclose all her test results until trial—had been rejected by the Kentucky Supreme Court on direct appeal: "An issue raised and rejected on direct appeal may not be relitigated in an RCr 11.42 proceeding by simply claiming that it amounts to ineffective assistance of counsel. *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006)." *Id.* at *5.

Typically, a petitioner's failure to follow a state court's adequate and independent state procedural rule would mean that he has procedurally defaulted the claim for purposes of federal habeas review. *See Maupin*, 785 F.2d at 138. However, the circumstances here are atypical. This is because Kentucky has since abrogated its *strict* prohibition on litigating an ineffective-assistance claim on collateral appeal when the underlying issue was rejected on direct appeal. *See Leonard v. Commonwealth*, 279 S.W.3d 151, 158 (Ky. 2009) (This case was decided after the Court of Appeals affirmed the denial of Barnes's RCr 11.42 motion but before the Kentucky Supreme Court

denied discretionary review). And the Sixth Circuit has concluded in circumstances similar to Barnes's that Kentucky's abrogation of its former procedural rule means that a petitioner cannot be said to have failed to follow a state court's adequate and independent state procedural rule for purposes of finding a procedural default in a § 2254 proceeding.

> Until recently, Kentucky followed a practice with regard to ineffective assistance of counsel claims that did not constitute either treatment of the claims on the merits or a procedural bar necessarily entitled to federal deference. According to Kentucky precedent as it stood when Hodge's case was on state collateral review, "[a]n issue raised and rejected on direct appeal may not be relitigated in [collateral] proceedings by claiming that it amounts to ineffective assistance of counsel." *Sanborn v. Commonwealth*, 975 S.W.2d 905, 909 (Ky. 1998), *overruled by Leonard v. Kentucky*, 279 S.W.3d 151, 159 (Ky. 2009). The Kentucky Supreme Court used this principle to reject a number of the ineffective assistance of counsel claims raised in Hodge's Criminal Rule 11.42 motion. *See Hodge II*, 116 S.W.3d at 473. Ineffective assistance of counsel claims in Kentucky are appropriately raised for the first time on collateral review, rather than on direct review. *See Humphrey v. Kentucky*, 962 S.W.2d 870, 872 (Ky. 1998). The result of Kentucky's practice is that several ineffective assistance claims that Hodge preserved by properly raising them on collateral review appear never to have been treated on the merits. *See Leonard*, 279 S.W.3d at 157-59 (appearing to read *Hodge II* as failing to consider ineffective assistance of counsel claims appropriately raised for the first time on collateral review). Where a state bars collateral review of a claim actually preserved by the petitioner, such bar will not constitute procedural default on federal review.

*Hodge*, 579 F.3d at 643. Accordingly, the Court will not treat this claim within Barnes's ineffective-assistance ground as procedurally defaulted.[10] This conclusion raises the question of what standard of review applies, as the Kentucky Court of Appeals did not review *the ineffective-assistance claim* on the merits, because *de novo* review typically applies where the state court has not ruled on the merits of a claim. *See Nields*, 482 F.3d at 450. Fortunately, the Sixth Circuit has already addressed this issue, concluding that the deference required by the AEDPA under §

---

[10] Another theory that might support a finding that the claim is not procedurally defaulted is the Supreme Court's instruction that "[a] claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration—not when the claim has been presented more than once." *Cone v. Bell*, 556 U.S. 449, 467 (2009).

2254(d) continues to apply to a state court's merits adjudication *of an issue necessary to decide* an ineffective-assistance claim, even though the state court did not address the ineffective-assistance variant of the claim on collateral review.

> Where the Supreme Court of Kentucky declined to consider an ineffective assistance claim because it had already resolved on direct review an issue necessary to the claim, we defer to the state court's earlier resolution of the underlying issue unless the ultimate result is contrary to, or an unreasonable application of, clearly established federal law.

*Hodge*, 579 F.3d at 643.  With the correct standard of review in mind, the Court reviews Barnes's claim under the deference required by the AEDPA.[11]  *Id.* at 642 ("The question before us is not whether counsel's performance fell short under *Strickland*, but rather whether Kentucky's determination that counsel's actions did not constitute ineffective assistance is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.").

Notably, in addressing Skinner's failure to disclose all of her findings until trial, the Kentucky Supreme Court concluded that Barnes could show no prejudice (or materiality) under *Brady* from the nondisclosure and, in fact, that the nondisclosure worked to his advantage because the live testimony was more favorable than the report and he was handed an opportunity to attack Skinner's testimony as inconsistent.

> This claim arises because Skinner's report on the victim, Miller, did not indicate a presence of barium or lead, yet she testified at trial that there were significant amounts of lead and the presence of barium on the swabs of Miller's hand, allowing the inference that he had fired a gun.  This was to Appellant's advantage.  The live testimony was more favorable than the report.  It also revealed an inconsistency that Appellant's counsel used to attack Skinner's testimony.

*Barnes*, 2006 WL 734006, at *3.  Without being able to show *Brady* prejudice on direct appeal on this issue, Barnes cannot show *Strickland* prejudice necessary to warrant habeas relief.  *See Hodge*,

---

[11] Alternatively, the Court has considered this claim under *de novo* review and concludes that the result would be the same.

579 F.3d at 644 ("Hodge could not establish his ineffective assistance claim without proving an issue the state had already resolved against him."). In making this conclusion, this Court notes that it is no matter that the Kentucky Supreme Court's determination of no prejudice (or materiality) was made in connection with a *Brady* claim "[g]iven that *Strickland* prejudice is governed by a standard worded similarly to the *Brady* materiality standard." *Joseph v. Coyle*, 469 F.3d 441, 462 (6th Cir. 2006). Accordingly, Barnes has failed to show that the rejection of this claim by the Kentucky Court of Appeals was contrary to or an unreasonable application of *Strickland*.

### b.    Failure to retain experts

Barnes's second claim within this ground is that trial counsel was ineffective for failing to retain experts to assist with the forensic evidence in his underlying criminal case. (R. 126, Page ID 6606). Specifically, Barnes states that "trial counsel could have and should have retained the services of an independent expert to review testi[mony] about the significance of the presence of barium and significant amounts of lead--in combination with the presence of antimony--on the swabs taken from Mr. Miller's hands in relation to whether or not he fired the .38 caliber revolver at Mr. Barnes[]." (*Id.* at Page ID 6607). In furtherance of this argument, Barnes cites the report of Forensic Scientist Larry Dehus, whom he retained in connection with his RCr 11.42 motion, with Dehus summarizing the services he could provide as follows:

> With respect to the gunshot residue issue, I would have obtained a round of the ammunition that was recovered from the revolver and had it tested to determine whether or not there were significant levels of antimony in the primer. If there were no significant levels of antimony in the primer, I would have testified that the elevated levels of barium and lead that were reportedly detected on the hand swabs of Mr. Miller were indicative of him having handled or fired this gun. Also, I would have requested an opportunity to have reviewed the notes and laboratory instrument printouts concerning the gunshot residue so that an independent evaluation could have been made of that data.

(R. 126, Page ID 6610; R. 1-6, Page ID 170). Although Barnes offers this opinion as proof of the prejudice he suffered for trial counsel not having obtained an expert, the merits discussion of Barnes's ineffective-assistance claim by the Kentucky Court of Appeals refutes the alleged usefulness of Dehus's report.[12]

> As discussed above, Skinner testified at trial that she was unable to reach a conclusion concerning whether Skinner had fired the allegedly planted pistol. Barnes does not cite us to an expert who would have been able to testify, based upon the available testing data, that Miller had fired the pistol. Hence, it appears that any expert trial counsel would have obtained could have, at best, simply testified in agreement with Skinner; i.e., that no definite conclusion could be drawn. While this additional testimony may have better driven the point home to the jury, nevertheless, it would have been redundant evidence. The jury was made aware that the gunshot residue testing was inconclusive and from that could have inferred that Miller fired the pistol. As such, we do not believe that the second prong of the *Strickland* test is met; that is, even if trial counsel had obtained a gunshot residue expert, there is not a reasonable probability that the outcome of the trial would have been different.

*Barnes*, 2008 WL 2468891, at *7. In sum, Barnes never offered an expert who could testify that Miller ever fired the gun. While Dehus did offer opinions about testing that he *would have done* and what his opinion *would have been* based off of *hypothetical test results*, this is not enough to prove prejudice under *Strickland* because the most that any expert, including Dehus, could offer based on the available testing was the redundant conclusion that it was inconclusive whether Miller fired the gun. Accordingly, with Barnes's proposed expert leaving him in ultimately the same position he was in at trial, Barnes has failed to show that the Kentucky appellate court's rejection of his claim that counsel was ineffective for failing to obtain a gunshot-residue expert was contrary to or an unreasonable application of *Strickland*.

---

[12] Unlike Barnes's first claim within this ground, the Kentucky Court of Appeals never treated this second claim as procedurally barred under state law. Thus, the deference called for under the AEDPA applies in typical fashion.

Barnes further alleges that his trial counsel was also ineffective for failing "to obtain independent expert witnesses in the area of forensic investigation [and] fingerprint analysis." (R. 126, Page ID 6615). But he offers no developed explanation for his contentions, which means that this Court cannot afford him habeas relief. *See Wogenstahl*, 668 F.3d at 335. However, the Court notes that the Kentucky Court of Appeals rejected a claim that trial counsel was ineffective for not retaining a fingerprint expert regarding the .38 caliber pistol.

> As part of his efforts for post-conviction relief, Barnes does not allege that he has had the gun tested and that Miller's fingerprints were found thereon. Thus, it is entirely speculative that if trial counsel had obtained a fingerprint expert, the expert's testing would have revealed Miller's fingerprints. Further, if the expert's testing revealed no prints, the expert's testimony would have disadvantaged Barnes.
>
> We further note that it was not simply the lack of fingerprints on the gun that cast doubt on Barnes's theory. There was also a lack of blood on the gun, even though it was an exceedingly bloody crime scene.
>
> Based upon the foregoing, we are unpersuaded that trial counsel's retaining of a fingerprint expert would have resulted in a reasonable probability that the outcome of the trial would have been different. Thus, this allegation of ineffective assistance also fails the second prong of the *Strickland* test.

Barnes, 2008 WL 2468891, at *7. Accordingly, to the extent that Barnes has sufficiently raised a challenge to this conclusion on habeas review, he has failed to show that the decision of the Kentucky Court of Appeals was contrary to or an unreasonable application of *Strickland*.

### c.    Miscellaneous matters

Lastly, the Court notes several summary contentions contained throughout Barnes's filings that warrant comment. First, Barnes states in his § 2254 Petition: "And finally, the Court of Appeals erred when it held that Mr. Barnes was not entitled to hearing because there were no material issues of fact that could not be conclusively resolved; i.e., conclusively proved or disproved, by an examination of the record." (R. 126, Page ID 6607). To the extent that Barnes intends this statement as a claim, state law questions such as the propriety of holding an evidentiary

hearing in state post-conviction proceedings are unreviewable in federal habeas proceedings. *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) ("Cornwell argues that the state court and the district court improperly denied him an evidentiary hearing on his claim that racial bias tainted his prosecution. The state court argument is not cognizable in habeas corpus proceedings, which cannot be used to challenge errors or deficiencies in state court post-conviction proceedings.").

Next, in an effort to prove that his trial counsel was ineffective, Barnes provides the "expert report" of an attorney, which opines on how trial counsel's handling of the case "fell below the standard of care regularly required of criminal defense counsel." (R. 126, Page ID 6616). The Court has reviewed the attorney's opinion but finds it unhelpful to the extent that it provides legal opinions on whether habeas relief should be granted, as legal determinations are the sole province of the courts that oversee this case, not an attorney hired by Barnes. *See Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) ("Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn.").

Finally, the Court notes that Barnes's Reply in support of this ground criticizes Respondent for not directly addressing two cases Barnes cited that addressed ineffective-assistance-of-counsel claims, *Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006), and *Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007). (R. 18, Page ID 878). To the extent that Barnes argues that he is entitled to relief because Respondent has not addressed every single case cited in his § 2254 Petition, he is

mistaken.[13]  *See McAuliffe v. United States*, No. 2:08-CV-618, 2009 WL 1597741, at *1 (S.D. Ohio June 5, 2009) ("[T]he failure of the United States specifically to address each and every argument made in a § 2255 petition does not require the Court to grant relief to the Petitioner.").

### C.    Barnes's New Grounds

The Court now considers the following grounds related to the AFIS report that Barnes first presented upon his return from state court:

> 1.  The State suppressed the AFIS report evidence and identity of the AFIS Analyst while failing to correct false testimony to the jury in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Rosencrantz v. Lafler*, 568 F.3d 577, 584-588 (6th Cir. 2009); *United States v. Bagley*, 473 U.S. 667, 676 (1985) and *United States v. Agurs*, 427 U.S. 97, 104 (1976), and in violation of Mr. Barnes' rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

> 2.  The Prosecutor's Violation of *Brady/Rosencrantz v. Lafler,* 568 F.3d 577, 583 (6th Cir. 2009).

> 3.  Alternatively, Trial Counsel was ineffective for failing to conduct a reasonable investigation to obtain the AFIS report and ascertain the identity of the AFIS analyst pursuant to *Strickland v. Washington*.

(R. 126, Page ID 6440-6505).  Respondent contends that these grounds are procedurally defaulted and are also meritless.  (R. 133).  Barnes asserts that the grounds are not procedurally defaulted, and, alternatively, if they are, he can establish cause and prejudice to excuse their procedural default.  (R. 136, Page ID 6797).  Because it is evident that Barnes procedurally defaulted these grounds, the Court follows the Supreme Court's instruction to adjudicate these grounds on that basis as opposed to reviewing the merits.  *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013)

---

[13] And to the extent that Barnes would levy a similar criticism against this Court for not thoroughly addressing the *Dando* and *Richey* cases, he would be mistaken.  While both cases generally provide information regarding the legal standard of ineffective-assistance-of-counsel claims, neither is ultimately helpful to Barnes, as the critical problem for him is that he failed to show that the state court's conclusion—that he can show no prejudice under *Strickland*—is contrary to or an unreasonable application of Supreme Court precedent.

("Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition."); *see also Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) ("However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue."); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) ("If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be reviewed in habeas proceedings."). Accordingly, the Court will first address Barnes's procedural default of these grounds and then address his argument for excusing his procedural default.

### 1.   Barnes's procedurally defaulted his grounds

As alluded to above in discussing the legal standards of procedural default, "[a] claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). The first way, which is what happened here, is when a petitioner fails "to comply with [a state] procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief." *Id.* The second way is when a petitioner fails "to raise a claim in state court" and pursue it through the state's ordinary appellate review procedures, which is not at issue here because Barnes raised his grounds in state court and appealed their denial until the Kentucky Supreme Court denied discretionary review. *Id.*

Considering the first type of procedural default, all of the requirements are met here. First, Barnes failed to comply with Kentucky's procedural rules that prohibit a defendant from raising issues in a post-conviction proceeding that are untimely or that could have been raised on direct appeal or collateral review. Critically, the Kentucky Court of Appeals concluded that the factual

allegation underpinning all of Barnes's grounds—the production of the AFIS report for the first time in Barnes's federal habeas proceedings—did not justify granting relief on Barnes's motion to vacate his conviction and grant a new trial under RCr 10.02, RCr 10.06, and CR 60.02(d) and (f) because Barnes knew the information from the AFIS report since before his first trial.

> As mentioned previously, the fingerprint analysis report was not provided to the defense before trial or retrial, but defense counsel knew in 1999—well before the first trial got underway in 2001—analysis had been performed and completed. As of November 30, 1999, he knew the results of the analysis, he just lacked the physical report. The trial court found defense counsel could have easily acquired the actual report directly from AFIS by making a simple telephonic request. The trial court concluded no good cause justified consideration of a motion filed outside the one-year window.
>
> We agree with the trial court. Counsel knew well in advance of the first trial fingerprint analysis had occurred and knew the testing "produced no significant results." Counsel also knew it did not have the physical report confirming those results. Furthermore, when ultimately produced, albeit not until 2009, Cox Barker's report stated, "no latent prints of value for comparison were developed[,]" supporting [the prosecution's] 1999 summary of the lab analysis. Thus, the physical report added no new information. Had counsel desired a complete file, he could have requested the report from AFIS or simply reminded the Commonwealth the report had not been provided in discovery. Trial counsel did neither. But, inaction is not always ineffective assistance of counsel. "It is not ineffective assistance of counsel to fail to perform a futile act." *Bowling v. Commonwealth*, 80 S.W.3d 405, 415 (Ky. 2002). Barnes has not persuaded us the actual report would have changed the outcome of the retrial. Based on the record, we have no grounds on which to conclude the trial court abused its discretion.

*Barnes*, 2018 WL 2754474, at *4-5. Accordingly, Barnes having had all of the key information all along meant that he could not establish cause to bring his grounds in state court years later, rendering his grounds untimely and improperly successive under Kentucky's rules. *Id.* at *4-6.

Second, the Kentucky Court of Appeals enforced the rules, concluding that all of Barnes's grounds were untimely presented and could have been presented in earlier state court proceedings.

> Because the claims could have been included in the direct appeals or the RCr 11.42 motion, this latest CR 60.02 motion is a successive collateral attack and as such is prohibited. *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (citing

*Gross*, 648 S.W.2d at 856). The trial court correctly found the current CR 60.02 claim is barred both by time and procedure.

Finally, Barnes's claims do not justify granting a new trial under RCr 10.02(1). This rule authorizes a trial court to order a new trial "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." Granting a new trial is entirely discretionary and frowned upon when newly discovered evidence "is merely cumulative or impeaching in nature." *Foley v. Commonwealth*, 425 S.W.3d 880, 888–89 (Ky. 2014) (citing *Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky. 1990)). Here, the physical lab report merely confirmed information given to the defense orally in 1999. Thus, it was not truly new, and it was "merely cumulative." Furthermore, it would not have caused the Commonwealth to change its theory of the case, and we cannot say with "reasonable certainty" it "would probably change the result if a new trial should be granted." *Jennings v. Commonwealth*, 380 S.W.2d 284, 285–86 (Ky. 1964) (quoting *Ferguson v. Commonwealth*, 373 S.W.2d 729, 730 (Ky. 1963)).

*Id.* at *6.

Third, refusal of the Kentucky Court of Appeals to hear claims in a post-conviction proceeding that were time barred or could have been raised in earlier proceedings is independent and adequate state grounds for denying review. *See Wheeler v. Simpson*, 852 F.3d 509, 515 (6th Cir. 2017) (describing Kentucky's prohibition on considering claims in post-conviction proceeding that could have been or raised on direct appeal as "an independent and adequate state ground for denying review"); *Slider v. Lane*, No. 5:20-CV-343-CHB-HAI, 2020 WL 6277302, at *4 (E.D. Ky. Oct. 5, 2020), *report and recommendation adopted*, No. 5:20-CV-343-CHB, 2020 WL 6276937 (E.D. Ky. Oct. 26, 2020) (describing Kentucky's prohibition on considering claims that are untimely under CR 60.02 or that could have been raised in an earlier post-conviction proceeding as "two independent and adequate state procedural rules"); *see also Smith v. Bagley*, No. 1:00 CV 1961, 2014 WL 1340066, at *62 (N.D. Ohio Apr. 3, 2014) ("The procedural default at issue here stemmed from Mr. Smith's untimely assertion of his *Brady* claims on appeal in state court. Rules governing the timeliness of appeals, of course, are fundamental to state appellate

procedure, and federal courts long have recognized that the failure to comply with those rules is a reasonable and valid basis on which to bar habeas review.").

Barnes, however, objects to the conclusion that his claims are procedurally defaulted, arguing that "he fully complied with Kentucky's procedural rules and the Kentucky Court of Appeals was wrong when it found he had procedurally defaulted." (R. 126, Page ID 6515). To the extent that Barnes suggests that this Court is at liberty to generally review the state courts' application of Kentucky's laws, he is mistaken. Like the prohibition on reviewing state law errors for purposes of granting habeas relief, this Court is generally forbidden from determining whether state courts misapplied state procedural rules.

> Principles of comity require federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues of state procedural law. Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice. Therefore, it follows that the district court properly deferred to the state court's finding as to whether Israfil's third post-conviction motion had been submitted according to Ohio's timeliness requirements.

*Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001) (internal citations omitted); *see Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987) ("Whether or not the Ohio Juvenile Court complied with the procedural requirements of Ohio law is not a matter for this court to decide on a petition for habeas corpus relief. The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure.") (internal citation omitted); *McClain v. Sheldon*, No. 1:17 CV 1164, 2019 WL 2272814, at *6 (N.D. Ohio Jan. 31, 2019), *report and recommendation adopted*, No. 1:17 CV 1164, 2019 WL 2271177 (N.D. Ohio May 28, 2019) ("In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law and may not second-guess a state court's interpretation of its own procedural rules.").

However, this Court is aware that "federal habeas review is [not] barred every time a state court invokes a procedural rule to limit its review of a state prisoner's claims"; rather, a federal court must decide whether the rule in question is an independent and adequate bar to habeas relief. *Cone*, 556 U.S. at 465. For example, the Supreme Court has declined to find a procedural default where a petitioner failed to comply with a state procedural rule, but, notably, that decision was reached only after the Court concluded that the rule "did not constitute a state ground adequate to bar federal habeas review." *Lee v. Kemna*, 534 U.S. 362, 366 (2002). Critically, here, this Court's above analysis has already cited authority demonstrating that the procedural rules that the Kentucky state courts relied on in this case are independent and adequate state grounds for denying review and additionally found the other prerequisites for a procedural default, namely, that Barnes failed to comply with state procedural rules and the state courts enforced those rules. Accordingly, Barnes's complaint that Kentucky misapplied its own law in determining that he was procedurally barred from state court post-conviction relief is beyond this Court's review in this instance.[14] *Ross v. McKee*, 465 F. App'x 469, 473 (6th Cir. 2012) ("Ross claims that, because his application for leave to appeal arrived timely at the Michigan Supreme Court's mailing address, it was timely filed under Michigan law. This court does not have the power to resolve such a claim. To do so

---

[14] In connection with this argument, the Court notes that Barnes cites to this Court's Order granting him leave to amend his habeas petition in an apparent attempt to bolster his assertion that he was "diligent" under Kentucky's procedural rules. (R. 126, Page ID 6435-36). This Court's prior discussion of diligence was strictly related to whether Barnes had demonstrated a basis to amend his Petition under Federal Rule of Civil Procedure 15(a). (R. 106, Page ID 4855). Moreover, this Court specifically noted that it was the state courts' prerogative to determine whether Barnes met Kentucky's requirements for state post-conviction relief. "Petitioner has demonstrated good cause for not discovering the report during the state proceedings; however, it is not clear whether the Kentucky courts permit tolling of the one-year requirement to present a CR 60.02(b) filing. Nevertheless, this is an issue for the state court to determine." (*Id.* at Page ID 4863) (internal citation omitted). Thus, having addressed diligence under a different legal framework, this Court's prior Order does not and cannot bind the state courts in determining whether Barnes complied with Kentucky's procedural requirements. *Cf. Cunningham v. Shoop*, No. 3:06 CV 167, 2019 WL 6897003, at *13 (N.D. Ohio Dec. 18, 2019), *certificate of appealability denied*, 817 F. App'x 223 (6th Cir. 2020) ("The court's finding of diligence, as explained above, arose in the context of AEDPA's § 2254(e)(2), not a state court's ruling on diligence under a state law or procedural rule.").

would be to dictate Michigan procedural law to the Michigan Supreme Court."); *Peters v. Chandler*, 292 F. App'x 453, 459 (6th Cir. 2008) ("Moreover, since this is a matter of state procedural law, we defer to the Kentucky Court of Appeal[s'] conclusion that Peters should have raised this claim on direct appeal."); *Avery v. Warden, Marion Corr. Inst.*, No. 2:18-CV-387, 2020 WL 2126523, at *2 (S.D. Ohio May 5, 2020) ("Petitioner thereby has committed a procedural default.  Further, this Court is bound by a state court's interpretation of state law.") (internal citation omitted).

### 2.     Barnes cannot excuse his procedural default

Alternatively, Barnes argues that he "meets the requirements of cause and prejudice" to excuse his procedural default.  (R. 126, Page ID 6515).  Procedural default is not an absolute bar to relief and may be excused "where a petitioner demonstrates cause and prejudice for the default." *Williams*, 460 F.3d at 799.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule. Demonstrating prejudice requires showing that the trial was infected with constitutional error." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986), for the cause standard) (citing *United States v. Frady*, 456 U.S. 152, 169 (1982), for the prejudice standard).

Here, Barnes employs the most common methods to establish cause and prejudice, presenting ineffective-assistance and *Brady* claims to excuse his default.  *See Jones v. Bagley*, 696 F.3d 475, 484 (6th Cir. 2012) ("An ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is cognizable to show "cause and prejudice" for procedural default and—along with a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)—is the legal theory most commonly used to attempt to

circumvent the procedural default rule."). Specifically, Barnes asserts the following claims to excuse the procedural default of his AFIS grounds:

> The State violated the Constitutional requirements of *Brady/Rosencrantz* in suppressing the AFIS evidence and failing to correct false testimony, (ii) Mr. Barnes's Trial Counsel violated the Constitutional requirements of *Strickland* and was ineffective in failing to investigate and obtain the AFIS evidence and ascertain the identity of the AFIS analyst, and thus the factual and/or legal basis for the AFIS claims was not reasonably available—all causing Mr. Barnes to suffer actual prejudice.

(R. 126, Page ID 6516). If these claims sound familiar, it is because they are the same substantive AFIS grounds that Barnes seeks habeas relief on. The problem with this tactic is self-evident. Barnes cannot use the same grounds that he defaulted to excuse his procedural default.

True, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But the ineffective-assistance claim must be directed to a separate constitutional claim: "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* (emphasis in original). Accordingly, to the extent that Barnes tries to use his ineffective-assistance claim to excuse his ineffective-assistance ground for habeas relief, he cannot do so. Additionally, any "ineffective-assistance claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* at 446. As discussed above, Barnes's ineffective-assistance ground is itself defaulted; thus, to the extent that Barnes tries to use it to excuse his *Brady/Rosencrantz* grounds, he cannot.

The same holds true for Barnes's *Brady/Rosencrantz* claims, which are themselves independent constitutional claims that cannot be used to excuse the default of Barnes's *Brady/Rosencrantz* habeas grounds. To the extent that Barnes tries to use his *Brady/Rosencrantz*

claims to excuse the procedural default of his ineffective-assistance ground, it is true that, if a petitioner "can meet the elements of his *Brady* claim and the withheld evidence was the reason the claim was not presented to the state court, he also has established cause and prejudice to excuse his procedural default." *Henness v. Bagley*, 644 F.3d 308, 324 (6th Cir. 2011). However, in this case, Barnes *was able to present* his claims to the state court citing the very evidence he asserts was withheld. But the state courts, after reviewing the *Brady/Rosencrantz* claims, found them to be procedurally barred under state law, which means that the same habeas grounds are procedurally defaulted. Thus, Barnes cannot excuse his ineffective-assistance ground with his procedurally defaulted *Brady/Rosencrantz* claims. Accordingly, as Barnes has procedurally defaulted his AFIS grounds and not shown cause and prejudice to excuse the default, his grounds fail.

## III.    CERTIFICATE OF APPEALABILITY

Barnes is not entitled to a certificate of appealability (COA). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant. A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Barnes's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a COA be denied upon the Court's entry of a final order in this case.

## IV.   CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.      Barnes's § 2254 Petition (R. 1), as amended (R. 111; R. 126), **be denied** and this matter **be dismissed;**

2.      a COA **be denied** by the Court in conjunction with the entry of its final order in this matter;

3.      Judgment in favor of the Respondent **be entered** contemporaneously with the Court's entry of its final order; and

4.      this case **be stricken** from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (b) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Judge and the Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 28th day of February, 2022.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 General\09-299-GFVT Barnes R&R final.docx