UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BECKHAM B. BARNES, | ) | |
| | ) | Civil No. 6:09-cv-00299-GFVT-CJS |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| TIM LANE, WARDEN, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Petitioner Beckham Barnes's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [R. 1; R. 111; R. 126.] Consistent with local practice, this matter was referred to Magistrate Judge Candace J. Smith for initial screening and preparation of a Report and Recommendation. Judge Smith filed her Report and Recommendation on February 28, 2022, in which she recommends that Mr. Barnes's petition be denied. [R. 140 at 50-51.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service of the Report and Recommendation to file any objections or else he waives his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection must "explain and cite specific portions of the report which [defendant] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and citations omitted). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th

Cir. 1991). On March 11, 2022, Mr. Barnes timely filed three specific objections to the Report and Recommendation. [R. 142.]

The Court has an obligation to conduct a *de novo* review of the portions of Judge Smith's findings to which Mr. Barnes objected. *See* 28 U.S.C. § 636(b)(1)(C). The Court has satisfied that duty by reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, and applicable procedural rules. For the following reasons, Mr. Barnes's objections will be **OVERRULED**, and Judge Smith's Recommendation will be **ADOPTED**.

**I**

Judge Smith's Report and Recommendation accurately sets out the complex factual and procedural background of the case. [*See* R. 140 at 1–9.] The Court incorporates Judge Smith's discussion and will only include a brief recitation of the facts here. In 1999, Mr. Barnes alleges he awoke in the middle of the night to his dogs barking and saw an intruder in his office, which was located in a barn across from his home. *Barnes v. Commonwealth*, 2004-SC-000197-MR, 2006 Ky. Unpub. LEXIS 33 at *1 (Ky. March 23, 2006). He states he heard gunshots and returned fire. *Id.* at *3. The "intruder" turned victim was Troy Miller, who sometimes worked with Mr. Barnes on land surveying projects. *Id.* at *2. Mr. Barnes "admits to shooting Miller but contends that it was in self-defense." *Id.* at *5. At his first trial, the jury convicted Mr. Barnes of intentionally murdering Miller and he was sentenced to twenty-two years in prison. *Id.* at *1.

Mr. Barnes appealed his conviction to the Kentucky Supreme Court, which found that improper comments in the prosecutor's closing statements violated his right to a fair trial. *Id.* at *1 (citing *Barnes v. Commonwealth*, 91 S.W.3d 564 (Ky. 2002)). The case was remanded for a

2

new trial, where he was again convicted of murder and sentenced to twenty-five years of imprisonment. *Id.* Barnes appealed again, but his conviction was affirmed. *Id.* at *18.

At trial, the prosecution claimed Barnes intentionally shot Miller but staged the scene to make it appear he did so in self-defense. [*See* R. 105-3 at 23.] A crucial portion of its case was that the gun found next to Miller's body had "no blood, no fingerprints, [and] no antimony," which they claimed proved that Miller had not shot or attempted to shoot Barnes, so the killing could not have been in self-defense. *See id.* One Detective testified that he inspected the gun at the scene and could not find blood or fingerprints. [R. 22-15 at 30-31.] A firearms expert testified that no fingerprints were found when the gun was tested. [R. 22-12 at 5.] This evidence was important to the Government's case, as it argued that the lack of evidence on the gun showed it was not fired by Miller. [R. 105-3 at 20.]

Mr. Barnes has made many attempts to attack the investigation he faced, his trial, and his conviction. Between his second conviction and his sentencing, he filed an Open Records Request for the analysis of the gun and did not receive one. [R. 87-5 at 1.] He sought a new trial as a result, claiming that not receiving a record of the analysis meant the gun was not analyzed, contrary to trial testimony, but the motion was denied. *Id.* at 5. Then in 2007, Mr. Barnes moved to vacate his judgment and conviction under Kentucky Rule of Criminal Procedure (RCr) 11.42 for ineffective assistance of counsel. [R. 121-1 at 40-54; R. 121-2 at 1-15.] The state trial court denied Mr. Barnes's motion, which was affirmed by the Kentucky Court of Appeals and the Kentucky Supreme Court denied discretionary review. [R. 121-3 at 27-31; R. 122-1 at 3-20].

The following week, Mr. Barnes filed this § 2254 petition. [R. 1.] The Court granted his Motion to Supplement the petition with a report prepared by the Automatic Fingerprint Identification Section of the Kentucky State Police Crime Lab, which concluded that no

3

fingerprints were found on the firearm. [R. 17.] The Court also allowed Mr. Barnes to conduct discovery on the production of the AFIS report and he eventually moved to amend his § 2254 petition to include new grounds based on that discovery, which the Court granted. [R. 32; R. 83; R. 106.] After filing the amended petition, the Court granted Mr. Barnes's request to hold this matter in abeyance while pursuing a matter regarding the AFIS report in state court. [R. 116; R. 117.] That state matter was denied, the appellate court affirmed, and the Kentucky Supreme Court denied discretionary review. [R. 122-1 at 39-55; R. 122-2 at 1-51; R. 122-3 at 1-49; R. 122-4 at 1-32; R. 124-7 at 1-17.]

After that state proceeding concluded, Mr. Barnes moved to reopen this case and again amend his petition and the Court granted both requests. [R. 120.] Judge Smith characterized Mr. Barnes's second amended petition, the operative pleading, as raising the following grounds for relief:

1. Mr. Barnes's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution were violated when the Venue in Mr. Barnes's case was not returned to Russell County from Wayne County.
2. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when expert scientific testimony regarding gunshot residue testing was admitted in his trial.
3. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the prosecution withheld material evidence regarding the gunshot residue present on Mr. Miller's hands in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).
4. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when evidence regarding tire tracks were admitted in trial.
5. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the Trial Court permitted impeachment on collateral matters in his trial.
6. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated when the jury received instructions that shifted the burden of proof in his case.
7. Mr. Barnes's rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution were violated due to the cumulative trial error in his case.

8. Mr. Barnes was denied the right to effective assistance of counsel and due process under the Fifth, Sixth, and Fourteenth Amendments due to his Trial Counsel's ineffective performance.
9. The State suppressed the AFIS report evidence and identity of the AFIS Analyst while failing to correct false testimony to the jury in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Rosencrantz v. Lafler*, 568 F.3d 577, 584-588 (6th Cir. 2009); *United States v. Bagley*, 473 U.S. 667, 676 (1985) and *United States v. Agurs*, 427 U.S. 97, 104 (1976), and in violation of Mr. Barnes's rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
10. The [prosecutor violated] *Brady/Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009).
11. Alternatively, Trial Counsel was ineffective for failing to conduct a reasonable investigation to obtain the AFIS report and ascertain the identity of the AFIS analyst pursuant to *Strickland v. Washington*.

[R. 140 at 8-9 (citing R. 126).] Judge Smith filed a Report and Recommendation resolving each of these grounds for relief on February 28, 2022, to which Mr. Barnes filed objections. [R. 140; R. 142.] The matter is now ripe for review.

## II

### A

Section 2254 motions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Lindh v. Murphy*, 521 U.S. 320 (1997). Section 2254 provides that a petitioner may obtain *habeas* relief if a state court's adjudication of the petitioner's ground "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." *Id.* (quoting 28 U.S.C. § 2254(d)(1)–(2)). The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing § 2254(e)(1)).

5

The "contrary to" and "unreasonable application of" clauses have different meanings. A state court's decision is contrary to clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision may involve an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). To satisfy the "unreasonable application" standard, however, a state court's decision must have been "objectively unreasonable," and not merely incorrect or erroneous. *Id.* at 520–21. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Habeas* relief is difficult to obtain. "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–03. In *habeas* cases, the petitioner carries the burden of proof, and "this is a difficult to meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

This Court must make a *de novo* determination of those portions of a recommended disposition to which objections are made. 28 U.S.C. § 636(b)(1)(c). When no objections are made, however, this Court is not required to "review . . . a magistrate's factual or legal

conclusions, under a *de novo* or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nevertheless, the Court has considered the record and ultimately agrees with the Judge Smith's recommendations to which Mr. Barnes did not object. Next, the Court will conduct a *de novo* review of Judge Smith's objected-to recommendations.

B

Mr. Barnes's first two objections challenge Judge Smith's findings on his claims regarding the testimony of expert witness Zenobia Skinner. [R. 142 at 1-22.] Before Mr. Barnes's trial, the Government produced Skinner's reports comparing hand swabs taken from Miller to swabs taken from firearms examiner Freels after he conducted a test fire of the gun found by Miller's body. [R. 22-29 at 23; R. 22-30 at 14.] The swabs were tested for antimony, barium, and lead. [R. 22-12 at 32.] At trial, Skinner explained that significant levels of all three elements in a field test establish that gunshot residue was present, but that test fires only needed significant levels of one element to make the same conclusion. [R. 22-14 at 7.]

Skinner's report stated that "significant amounts of antimony were not detected" on Miller's hand swabs but noted "this does not eliminate the possibility that the subject handled or discharged a firearm." [R. 22-29 at 23.] On the swabs of Mr. Freels's hands after he test-shot the gun, "significant amounts of barium were not detected; significant amounts of antimony and lead were detected." [R. 22-31 at 14.] However, at trial, Skinner summarized her findings as follows:

> I found significant levels of antimony and lead with Mr. Freels' testing. I did not find significant levels of antimony and barium with Troy Miller. And then on Mr. Miller's left palm and right back, I found significant levels of lead. I did not find significant levels of lead on either his left back or his right palm.

[R. 22-14 at 7.] She also stated that an insignificant amount of antimony and barium was present on Miller's swabs. [R. 22-12 at 42; R. 22-14 at 6.] Before she testified, Mr. Barnes and his

7

counsel did not know that significant levels of lead and a presence of barium and antimony was found on Miller's hand swabs. [R. 126 at 16.] He alleges that the Commonwealth committed a *Brady* violation by not disclosing the details of Skinner's tests earlier, and that his trial counsel provided ineffective assistance by failing to obtain those details before trial and not calling an expert witness to challenge Skinner's testimony. [R. 126 at 190-97, 217-30.] Judge Smith rejected both claims, and Mr. Barnes objects. [R. 140 at 21-26, 32-39; R. 142 at 1-22.]

**1**

Mr. Barnes argues Judge Smith incorrectly determined the Kentucky Supreme Court's rejection of his *Brady* claim was not contrary to nor unreasonably applied federal law. [R. 142 at 1-11.] He alleges the state's failure to disclose the details of Skinner's findings prior to trial violated his Fifth and Fourteenth Amendment rights under *Brady v. Maryland*, 373 U.S. 83 (1963). [R. 126 at 190-97.] The Kentucky Supreme Court rejected this claim because "the live testimony was more favorable than the report" and allowed Mr. Barnes to attack Skinner's testimony. *Barnes*, 2006 Ky. Unpub. LEXIS 33, at *8-9. Ultimately, the court found the "likely" *Brady* violation constituted harmless error because it was cured by the testimony which presented "the jury directly with the exculpatory evidence." *Id.* In his § 2254 petition, Mr. Barnes argues "no *Brady* violation is harmless" and that the decision "was contrary to, or involved an unreasonable application of, clearly established federal law." [R. 126 at 191.]

The Due Process Clause requires the government to disclose material evidence that is favorable to the defendant. *Brady*, 373 U.S. at 83. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. Thus, "[t]here are three components of a true

8

*Brady* violation: the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A defendant is prejudiced when there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*, 473 U.S. at 682). Evidence that falls into this category is called material evidence and the term "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. But establishing a *Brady* violation does not necessarily warrant § 2254 relief; the movant must show that the state court's ruling on the issue was contrary to, or an unreasonable application of, federal jurisprudence regarding *Brady*. 28 U.S.C. § 2254(d).

Judge Smith assumed for the purpose of analysis that the first two *Brady* elements were met and focused on whether Mr. Barnes was prejudiced by the suppression. [R. 140 at 22 n.7.] She found the state court ruling was not contrary to *Brady*. *Id.* at 23. Though the court stated there was "likely" a *Brady* violation, it found the violation was "harmless." *Id.* This is technically incorrect because harm, or more specifically prejudice to the defendant, is a necessary element of a *Brady* violation. Therefore, if the suppression was harmless, it cannot constitute a *Brady* violation. Judge Smith noted this is a common misconception, citing the Supreme Court's recognition that the term "*Brady* violation" is often used to describe suppression of material evidence, regardless of whether there was prejudice. *Id.* (citing *Strickler*, 527 U.S. at 281). In reality, the state court denied Mr. Barnes's *Brady* claim because he did not establish prejudice. *Id.* at 24. Judge Smith found the state court did not unreasonably apply

9

federal law because Mr. Barnes "offers no specific examples of what counsel could have presented . . . so as to establish prejudice." *Id.* at 25.

Mr. Barnes objects to this ruling. [R. 142 at 1-11.] He claims that if he knew the details of Skinner's report before trial, he could have rebutted the Commonwealth's evidence throughout trial, questioned the jurors about gunshot residue testing, emphasized the testing in his opening statement, and called an expert witness, which would have resulted in a different outcome. [*See* R. 142 at 6.] He specifically contends an expert could have "debunked" Skinner's testimony and "testified about the significance" of all three elements being found on Miller's hand. *Id.* Mr. Barnes then lists the remaining evidence and how it was "contradicted," claiming it would be insufficient to convict him if he could have used expert testimony to contradict Skinner. *Id.* at 7-11.

Mr. Barnes does not explain why he believes the state court's ruling was contrary to or unreasonably applied *Brady* and its progeny. *See id.* at 1-11. He largely relies on an expert report—prepared years after trial—stating "high levels [of] barium and lead by themselves would be indicative of gunshot residue." *Id.* at 6 [citing R.1-6 at 4]. This report serves as an example of testimony Mr. Barnes could have used to dispute Skinner's testimony if he had known of her conclusions. *Id.* But Judge Smith correctly chose not to consider the report because it was not proffered to the state court, and the federal reviewing court is limited to the state court record. [R. 140 at 25 (citing *Carter v. Bogan*, 900 F.3d 754, 774 (6th Cir. 2018)).] Therefore, the expert report will not be considered.

Mr. Barnes also attempts to show he was prejudiced by listing the other evidence that was presented at trial and how it was "contradicted." [R. 142 at 7-11.] His objection frames the issue as if it is a foregone conclusion that none of the other evidence could support his conviction. *See*

10

*id.* But merely asserting alternative views and challenging the validity of evidence is insufficient to overcome the significant deference the Court grants to a jury's "determinations and resolutions of conflicts in testimony." *Caldwell v. Russell*, 181 F.3d 731, 738 n.6 (6th Cir. 1991). The jury viewed all the evidence Mr. Barnes points to, including the ways he alleges evidence was contradicted, and still convicted him of intentional murder. It is not the province of the Court to question that determination, so it cannot conclude there was no persuasive evidence of Mr. Barnes's guilt outside of Skinner's report.

It is not evident that the jury would have reached a different conclusion if Mr. Barnes was able to present Skinner's findings throughout trial because the jury heard and rejected his framing of the analysis. After Skinner testified about the details of her analysis, Mr. Barnes's trial counsel asked her: "You found antimony . . . in the Miller test and in the Freels test. You found barium in the Miller and in the Freels test. And you found lead in the Miller and the Freels test, right?" [R. 22-14 at 6.] This question—which leaves out any comparison of the significance of the *levels* at which those elements were found—clearly emphasizes to the jury Mr. Barnes's position that the gunshot residue tests were similar. The jury heard that question and Skinner's affirmative response and chose not to conclude that Mr. Barnes's self-defense theory had merit. There is not a reasonable probability that the jury would have concluded otherwise if it had heard this same assertion more consistently throughout trial.

Further, it is by no means certain that Mr. Barnes could have effectively framed Skinner's testimony as contradictory to, or even distinct from, her disclosed report. Mr. Barnes states, "the fact that Miller's hand contained all three elements of gunshot residue—in any amount—was material evidence." [R. 142 at 7.] If he had emphasized throughout trial that all three elements were found on Miller's swabs, this assertion would likely be rebutted by Skinner's explanation

11

of significant versus insignificant levels of elements and what is required to find the presence of gunshot residue on a field test. She explains that a field test requires significant levels of all three elements to conclude residue was present, while a test shot only requires a significant level of one element. [R. 22-14 at 7.] Therefore, it would be clear to the jury that the fact that all three elements were present on Miller does not necessarily mean he had gunshot residue on his hands. Though Skinner's reports were written differently, the conclusions she shared in the reports and through her trial testimony are all consistent.

There is also not a reasonable probability that presenting an expert witness would have resulted in a different outcome. Mr. Barnes does not allege that another expert would have contradicted Skinner's testimony by stating that the elements were in fact found in significant levels. Another expert could only have framed the conclusion drawn from Skinner's analysis of Miller's swabs differently, for example by concluding that the victim "may have" handled the gun, in comparison to Skinner's repeated assertion that she "could not rule out the possibility." [*See* R. 22-14 at 1.] But Mr. Barnes's trial counsel was able to, and did, emphasize the alleged uncertainty of Skinner's conclusion. He clarified that Skinner's statement implies Miller "could have fired the pistol." *Id*. Other than the proffered expert report that the Court cannot consider, Mr. Barnes does not explain what other support an expert would have provided.

Ultimately, Mr. Barnes was able to emphasize his view of Skinner's findings to the jury and how they "differed" from her report and the jury still denied his self-defense argument. There is not a reasonable probability that obtaining Skinner's detailed findings earlier would have allowed him to use these findings in a way that would have resulted in a different outcome. *See Harrington*, 56 U.S. at 104. Mr. Barnes was not prejudiced by the non-disclosure, so the state court's ruling that he did not suffer a *Brady* violation was not contrary to or an

12

unreasonable application of federal law. The Court agrees with Judge Smith's recommendation and Mr. Barnes's first objection will be overturned.

**2**

Mr. Barnes next argues his trial counsel was ineffective by not securing discovery regarding the gunshot residue evidence before trial or securing an expert witness to testify about the gunshot residue. [R. 126 at 217-230.] He argues the Kentucky Court of Appeals, upholding the denial of his RCr 11.42 motion, incorrectly "refused to review the issue . . . because it stated the issue was raised on direct appeal." [R. 126 at 218 (citing R. 1-11 at 10).] Judge Smith recognized that "typically, a petitioner's failure to follow a state court's adequate and independent state procedural rule would mean he has procedurally defaulted the claim for purposes of federal *habeas* review." [R. 140 at 34 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).] However, Kentucky's strict prohibition on collaterally raising ineffective assistance claims that were raised on direct appeal has since been abrogated. *Id.* (citing *Leonard v. Commonwealth*, 279 S.W.3d 151, 158 (Ky. 2009) and noting "[*Leonard*] was decided after the Court of Appeals affirmed the denial of Barnes's RCr 11.42 motion but before the Kentucky Supreme Court denied discretionary review"). Judge Smith treated the claim as if it had not been defaulted, and this Court will do the same. *Id.* at 35; *see also Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009).

Though the state court did not address the merits of the ineffective assistance claim, its findings on underlying issues necessary to that claim are still entitled to deference under the AEDPA. *Hodge*, 579 F.3d at 643. Judge Smith deferred to the Kentucky Supreme Court's conclusion that Mr. Barnes did not suffer prejudice from not having the details of Skinner's report before trial for the purpose of his *Brady* claim and applied that conclusion to his

13

ineffective-assistance claim. [R. 140 at 36 (citing *Barnes*, 2006 WL 734006, at *3).] Because the court's conclusion that Mr. Barnes did not suffer prejudice under *Brady* was not contrary to federal law or unreasonable, Judge Smith found he could not establish prejudice under *Strickland*. [R. 140 at 36.] Mr. Barnes objects to this conclusion. [R. 142 at 11-22.]

A movant must show that his counsel's performance was deficient and prejudicial to establish a claim for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Mr. Barnes recognizes that *Strickland* is very deferential to counsel, and this deference is "doubled" when a § 2254 claim is based on ineffective assistance. [R. 142 at 17 (citing *Harrington*, 562 U.S. at 105).] In such cases, "the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. The Court need not address both prongs of *Strickland*; rather, it may determine either prong is not satisfied and end its inquiry. 527 U.S. at 697. Like Judge Smith, the Court will focus on prejudice. Mr. Barnes presents largely the same prejudice argument as he did for his *Brady* claim. [R. 142 at 17-22.]

For the reasons the Court determined the state court was not contrary to or unreasonably applying federal law when it found Mr. Barnes did not suffer prejudice under *Brady*, the Court finds there was also no prejudice under *Strickland*. The Sixth Circuit has explained that *Strickland's* "more probable than not" and *Brady's* "reasonable probability" standards are "effectively the same." *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1102-03 (6th Cir. 2022). The "slight difference" between the two is not implicated here. *Id.* Accordingly, Mr. Barnes was not prejudiced by his trial counsel not obtaining the details of Skinner's report before trial or calling an expert witness, whether a result of the Commonwealth's suppression or

14

counsel's ineffective assistance. Therefore, the Court agrees with Judge Smith's ruling and will overrule Mr. Barnes's objection on this ground.

## C

The final issue is whether a certificate of appealability should be issued as to any of Mr. Barnes's claims. A certificate of appealability may be issued where the movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). It is the reviewing court's role to indicate what specific issues satisfy the "substantial showing" requirement. 28 U.S.C. §2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Judge Smith recommends that because "reasonable jurists would not debate the denial of [Mr.] Barnes's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further," a certificate of appealability should be denied as to all matters in this case. [R. 140 at 50.] Mr. Barnes does "object" to this recommendation, but it is insufficiently specific. He merely restates the rules for when a COA must be issued and states he "need not demonstrate that he would prevail on the merits." [R. 142 at 22.] Judge Smith did not recommend denial of a COA because he could not prevail on the merits. She accurately applied the correct standard and found reasonable jurists would not debate her recommendation of denial. [R. 140 at 50.] The Court agrees with Judge Smith's recommendation and will deny a certificate of appealability as to all claims.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Barnes's Objections **[R. 142]** are **OVERRULED** and Judge Smith's Recommended Disposition **[R. 140]** is **ADOPTED** as and for the Opinion of the Court;

2. Mr. Barnes's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody **[R. 1; R. 111; R. 126]** is **DENIED**;

3. A certificate of appealability is **DENIED** as to all claims; and

4. Judgment in favor of the Respondent shall be entered contemporaneously with the Court's final order in this matter.

This the 19th day of May, 2022.

Gregory F. Van Tatenhove
United States District Judge